**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter James GRAY, Defendant-Appellant.**

**Nos. 79–1018, 79–1425.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1979.

Decided Dec. 13, 1979.

David W. Dennis, Richmond, Ind., for defendant-appellant.

Douglas B. Altman, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PER CURIAM.

Defendant-appellant's, Walter James Gray, consolidated appeal challenges, on various grounds, the conviction and sentence which followed his entry of a guilty plea. The appellant also appeals an order of the district court entered after this appeal was docketed which granted in part and denied in part the appellant's motion to supplement the record.[1] The primary issue on appeal is whether the non-adherence of the district court to Fed.R.Crim.P. 11 requires vacating the judgment and conviction entered pursuant to the appellant's plea of guilty.

**I**

The appellant was indicted and arraigned for violations of 18 U.S.C. §§ 2, 1201—aiding and abetting a kidnapping and kidnapping. The kidnapping occurred while the appellant and two companions—Geraldine Harris and Brad Bradford—were traveling through Indiana.

In Indiana, the appellant, Harris, and Bradford had car trouble and decided to steal a car. The appellant forced Jerry Wyant, at gunpoint, to get into Wyant's car. Thereafter, the appellant and his companions bound and gagged Wyant and put him in the trunk of the car. They proceeded to drive Wyant's car to Alabama where the appellant and Bradford took Wyant to the outskirts of Birmingham. When the appellant attempted to stab Wyant, the knife bent. The appellant or Bradford (this fact is uncertain) then shot Wyant in the back. Wyant managed to survive.

The arraignment was held on October 26, 1978, and the appellant pled not guilty. At the arraignment, the district court asked the appellant if he understood the crime with which he was charged. After the appellant and his counsel answered affirmatively to that question the district court had the prosecutor explain the nature of the charge and the maximum penalty.

On November 27, 1978, the appellant changed his plea to guilty. The Government agreed to make no sentence recommendation. At no time during the hearing on the entry of the guilty plea did the district court describe the nature of the charge or the maximum penalty. The guilty plea was accepted and on December 27, 1978, the district court sentenced the appellant to a term of life.

---

1. The district court granted the motion to supplement as to: 1) the appellant's pre-sentence report; 2) a certified copy of the sentence given the co-defendant Geraldine Harris; and 3) a showing by the United States Attorney of the disposition of Brad Bradford, a juvenile who was turned over to state authorities. The motion was denied as to an affidavit of the appellant dated March 2, 1979, and an affidavit which was to be obtained from Brad Bradford. The March 2 affidavit pertains to the appellant's claims that his counsel was incompetent and that his plea was not voluntary.

This court will not enlarge the record to include material that the district court did not consider. *Borden, Inc. v. FTC*, 495 F.2d 785 (7th Cir. 1974); *United States v. Walker*, 601 F.2d 1051 (9th Cir. 1979). The only opportunity that the district court had to consider the appellant's affidavit of March 2 was in the motion to supplement the record. The district court never had an opportunity to pass on the merits of the allegations in the affidavit nor conduct an evidentiary hearing on the veracity of these allegations. Thus, we affirm the order of the district court which granted in part and denied in part the appellant's motion to supplement the record. Also, we grant the appellee's motion to strike the appellant's inclusion of this affidavit in his appendix and excerpts of the affidavit in the appellant's briefs. *Brown v. Wilson & Co.*, 230 F.2d 280 (7th Cir. 1956); *Commonwealth of Massachusetts v. United States Veterans Administration*, 541 F.2d 119, 123 n.5 (1st Cir. 1976).

## II

█ The appellant raises many issues in challenging his guilty plea and sentencing. The contentions can be grouped into four categories—1) unconstitutionality of the sentence imposed;[2] 2) incompetency of counsel; 3) failure by the district court to comply with Fed.R.Crim.P. 11; 4) other claims of involuntariness of the guilty plea. The claims of incompetence of counsel and the voluntariness of the guilty plea are not properly before us for disposition. These issues were never presented to the district court and the factual basis for these claims was never part of the record before the district court. *United States v. Coronado*, 554 F.2d 166 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).[3]

**2.** The appellant challenges his sentence on several constitutional grounds. He contends that the disparity between his sentence and that of his accomplices violated the Eighth Amendment's prohibition against cruel and unusual punishment and equal protection as embodied in the Fifth Amendment. The appellant received a sentence of life imprisonment while Harris pled guilty and was sentenced to 5 years and Bradford was tried in state court and sentenced to 15 years. It is also contended that the district court imposed an unduly harsh sentence which requires an exercise of this court's supervisory power over sentencing. *United States v. Wiley*, 278 F.2d 500 (7th Cir. 1960). We reject these contentions. If the sentence is within the statutory limits, a claim of cruel and unusual punishment is without merit. *United States v. Martell*, 335 F.2d 764 (4th Cir. 1964). *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978) (en banc), *cert. granted*, 441 U.S. 960, 99 S.Ct. 2403, 60 L.Ed.2d 1064 (1979), pending before the Supreme Court, would not affect our Eighth Amendment analysis. *Rummel* deals with the disproportionality of a life sentence under the Texas habitual offender statute. There is nothing to indicate that life imprisonment is a disproportionate sentence for the crimes committed by the appellant. Those cases which have ordered resentencing because of the disparity of sentences given to co-defendants presented allegations that the defendant was punished for the exercise of his Sixth Amendment rights. *United States v. Rauhoff*, 525 F.2d 1170 (7th Cir. 1975). *Cf. United States v. Gaertner*, 583 F.2d 308 (7th Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1238, 59 L.Ed.2d 469 (1979) (no manifest injustice in disparate sentences).

Nor was it improper for the district court to consider the character of the appellant and the circumstances of the crime in his sentencing.

Fed.R.Crim.P. 11 sets forth the required manner in which courts are to accept guilty pleas. While the rule sets forth many requirements, this case is concerned only with several of them.

(c) Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum penalty provided by law;

. . . . . .

(5) that if he pleads guilty or nolo contendere, the court may ask him questions about the offense to which he has plead-

*United States v. Allen*, 596 F.2d 227 (7th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979). Considering the violent and cold-blooded nature of the crime, it cannot be said that the district court failed to exercise judicial calm and temperance when he sentenced the appellant. *See also United States v. Moore*, 599 F.2d 310 (9th Cir. 1979).

**3.** The appellant's incompetency of counsel argument includes several contentions. First, the appellant claims that his counsel should have attempted to raise the defense of mental disease or defect. While there is some evidence in the record concerning the appellant's drug problem, the factual basis is insufficient for us to resolve this issue. The next two contentions appear frivolous. The appellant contends that the plea agreement obtained by his counsel was a bad agreement. Considering the crime charged and the particularly coldblooded nature of the crime the appellant's counsel was hardly in a strong bargaining position. Finally, the appellant contends that his counsel could have challenged the potential variance between the indictment and proof at trial. The indictment charged the appellant with kidnapping for "ransom reward and otherwise." The appellant argues that the proof would not have demonstrated a motive of ransom or reward. In raising this argument the appellant relies on a construction of 18 U.S.C. § 1201 which requires a proof of motive. *United States v. Varner*, 283 F.2d 900 (7th Cir. 1961). However, as the appellant acknowledges we overruled the *Varner* decision in *United States v. Atchison*, 524 F.2d 367 (7th Cir. 1975). We are aware of no reasons for us to overrule *Atchison* and return to the rule of *Varner*.

ed, and if he answers these questions under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement.

. . . . . .

(e)(1) The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

■■■ The appellant contends that the district court never informed him of the nature of the charge or the maximum penalty; that the district court never informed him of the potential use of his statements in a prosecution for perjury; and that the Government's agreement to make no sentence recommendation was not an option available under 11(e). The last two contentions are clearly without merit and can be treated summarily.[4] The first contention requires a more detailed discussion.

The Government argues that there was substantial compliance with the requirements of 11(c)(1). The Government relies on the fact that at the arraignment held one month earlier, the prosecutor had fulfilled this obligation.

In response the appellant makes several contentions. First, that the district court cannot delegate its responsibility under Rule 11 to the prosecutor. Second, even if it can be delegated, the information must be conveyed at the time the plea is entered; not one month prior at which time a plea of not guilty was entered. Because of the particular circumstances of this case we reject both of these contentions.

A

■■■ The preferable practice is for the district court to conduct all of the inquiries under Rule 11. But we do not consider it error for the prosecutor to describe the nature of the charge and the maximum penalty if the inquiry is done in the presence of the district court and the district court is satisfied that this information has been fully explicated and understood by the defendant.[5]

The concerns implicit in the appellant's argument against this delegation are that the defendant might feel coerced or pressured by the prosecutor or the prosecutor may misstate the information. We are mindful of these considerations and in a case where the prosecutor acts improperly the district court will be able to correct the error; or if the district court fails to insure that the procedure is fair we will be able to

---

**4.** This court has held that the failure to warn of the potential use of the statements in a prosecution for perjury is not error if the defendant is not under oath. *United States v. Fels*, 599 F.2d 142, 146 (7th Cir. 1979).

The appellant's contention that the Government's agreement to make no sentence recommendation was not an alternative available under 11(e)(1) is an overly restrictive reading of the Rule. Indeed, the agreement to make no recommendation is in substance, the same as an agreement "not to oppose the defendant's request, for a particular sentence. . . ." In the present case, the appellant requested that he be sentenced to an institution where he

could receive treatment for his drug problem. The Government did not oppose this request nor his request for leniency. Therefore 11(e)(1) was not violated.

**5.** The delegation of other Rule 11 responsibilities to the prosecutor—such as whether "the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement" Fed.R.Crim.P. 11(d)—may be impermissible. The opportunities for coercion and a defendant's obvious hesitancy to state that there have been promises or threats are significantly greater if this particular colloquy is conducted by the prosecutor.

review any error by reading the Rule 11 transcript on appeal.

Other courts have agreed and allowed some delegation of the Rule 11 inquiries to the prosecutor. *United States v. Keller,* 594 F.2d 939 (3d Cir. 1979) (prosecutor stated the maximum sentence which judge incorrectly stated); *United States v. Hamilton,* 568 F.2d 1302 (9th Cir.), *cert. denied,* 436 U.S. 944, 99 S.Ct. 2846, 56 L.Ed.2d 785 (1978) (prosecutor and judge stated the possible penalties and judge was satisfied that defendant understood possible penalties explained by the prosecutor); *United States v. Lambros,* 544 F.2d 962 (8th Cir.), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1976) (judge adopted extensive record made by prosecutor as to possible penalties, rights waived, and voluntariness of the plea). *Cf. United States v. Saft,* 558 F.2d 1073 (2d Cir. 1977) (indictment read by clerk to inform defendant of the nature of the charges).[6]

■ We therefore hold that it was not improper to rely upon the prosecutor to describe the nature of the charge and the maximum penalty.

**B**

The appellant contends that even if some delegation were possible, the information must be conveyed at the time the plea is entered. In the present case the prosecutor informed the appellant of the nature of the charge and the maximum penalty one month prior to the guilty plea hearing—at which time the appellant entered a plea of not guilty. The Government argues that the conveyance of the information one month prior to the guilty plea hearing was substantial compliance with Rule 11. For several reasons, we reject the argument of the appellant.

We believe that the contentions regarding the nature of the charge and the maximum penalty present somewhat different problems. Thus, we choose to discuss these issues separately.

■ Initially, we reject a construction of 11(c)(1) which literally requires that the judge personally address the defendant and inform him of the nature of the charge. Rather, we adopt a flexible and practical approach which emphasizes whether the purpose to be served by the Rule has been furthered by the particular procedure utilized by the district court. This, of course, is implicit in our discussion above that some of the Rule 11 inquiries can be delegated to the prosecutor. Thus, we proceed with our analysis rejecting an inflexible approach which requires literal adherence to the Rule.

With regard to the nature of the charge, the Government urges us to rely on the provision of this information at the arraignment. We do note that providing this information at the arraignment did notify the appellant of the nature of the charge. However, we do not rely entirely on the arraignment hearing to find that the appellant was informed of the nature of the charge. Instead, we also focus on the discussion between the district court and the appellant at the guilty plea hearing. We believe that this discussion in conjunction

---

**6.** The Fifth Circuit steadfastly requires strict compliance with Rule 11 and considers the delegation to the prosecutor a violation of the Rule. *United States v. Clark,* 574 F.2d 1357 (5th Cir.), *reh'g en banc denied,* 584 F.2d 115 (1978); *United States v. Crook,* 526 F.2d 708 (5th Cir. 1976). To the extent that the Fifth Circuit decisions are based on a doctrine of strict compliance, it appears that this doctrine is being evaluated en banc. *United States v. Dayton,* 592 F.2d 253 (5th Cir.), *reh'g en banc granted,* 592 F.2d 256 (1979).

Our language in *United States v. Fels,* 599 F.2d 142, 145 (7th Cir. 1979) which discussed the delegation to the prosecutor is distinguisha-

ble. In *Fels,* we were discussing the meaning of the phrase "address . . . personally" in the context of the district court speaking to the co-defendants as a group. Our reference to the *Crook* decision was solely to contrast the fact pattern that confronted us in *Fels.* The issue of delegation to the prosecutor was not presented in *Fels.* Also, in *Crook,* besides delegating to the prosecutor the statement of the nature of the charge and maximum penalty, the prosecutor also conducted the inquiry regarding the voluntariness of the plea required by Rule 11(d). While the court in *Crook* did not emphasize this latter point, as noted above, we consider that situation different.

with the information provided at the arraignment was adequate under Rule 11.

■ Rule 11 requires that the district court inform the defendant of the nature of the charge and insure that the defendant understands the charge. Of course, it is easiest to determine whether this duty has been discharged if the district court specifically describes the charge and asks the defendant if he understands the charge. However, this is not the only way to discharge the responsibility under Rule 11. The particular colloquy will vary from case to case depending on the complexity of the charges and the personal characteristics of the defendant—including age, education, intelligence, alacrity of his responses, and whether he is represented by counsel. *United States v. Wetterlin*, 583 F.2d 346 (7th Cir. 1978).

At the guilty plea hearing the following colloquy took place between the appellant, his attorney, and the district court.

Q. Now, Mr. Gray, have you discussed this agreement thoroughly with your attorney, Mr. Miller?

A. Yes, sir, I have.

Q. And have you had, or rather other than this agreement that you and I are now discussing, have any other promises or threats or inducements of any kind been made to you by anyone in an effort to get you to change your plea?

A. No, sir.

Q. And have you had within the last 48 hours, any alcohol or narcotics?

A. No, sir.

THE COURT: Mr. Miller, from your investigation of the facts, sir, and your research of the law, do you believe that this petition is in Mr. Gray's best interests?

MR. MILLER: Yes, sir, Your Honor, under the circumstances and based on the facts I do believe that it is in his best interest.

THE COURT: And do you believe, sir, that from your consultations with him that he fully understands the significance and the consequences of it?

MR. MILLER: Yes, Your Honor, I do, I left a copy of this petition with him overnight so he could look at it at his leisure, and if he had any questions I came back to the jail the next day and spent time with him if he had any questions about any part of it, so I believe he understands it, Your Honor.

Q. All right. Now, Mr. Gray, I want to turn to the indictment and I want you to tell me, sir, in your own words exactly what you did that makes you believe you are guilty of this offense?

After this question, the appellant, in very literate language, described his participation in the crime charged. Included in that statement was the following language:

. . . and so we decided after some discussion, we decided upon trying to steal a car, and after we couldn't steal a car we decided to try to take one, and we abducted Jerry Wyant, whereas we put a shotgun on him and put him in the trunk, and proceeded back to Alabama.

And later:

Q. Did you get all the way to Alabama?

A. Yes, sir, we did.

Q. Was Mr. Wyant in the trunk all the way down?

A. Yes, sir.

Q. What did you do with him when you got to Alabama?

A. Well, upon reaching Alabama, we discussed the matter again as to what to do with him, and we came up with the decision that we should get rid of him.

Q. Well, how did you go about doing that?

A. Well, he was shot.

And still later:

Q. I assume you left him wherever he was shot?

A. Yes, sir.

Q. Did you know at the time that you left him there that he was still alive?

A. No, sir, we didn't.

Q. And I assume that you knew that what you did in taking the car and taking Mr. Wyant was against the law?

A. Yes, sir.

■ The crimes the appellant was charged with were aiding and abetting kidnapping and kidnapping. It is true that the district court never informed the appellant about the nature of the charge in a literal sense. Instead, the district court allowed the appellant to describe his participation in the crime. There can be no doubt that the appellant, in describing the crime was fully aware of the charge against him. We deal here with a charge of kidnapping, all of the elements of which were described by the appellant in his description of the crime. While we do not say that the district court may always rely on the defendant's description of the events to inform a defendant of the charge, in this case the appellant's clear description of the criminal activities indicate that he knew the crime charged. In making this determination, we do not rely on the appellant's subjective knowledge or make assumptions about what he knew. Rather, we believe that the appellant's description of this simple crime and the information provided at the arraignment were sufficient under Rule 11.[7]

As we stated in *United States v. Wetterlin*, 583 F.2d 346 (7th Cir. 1978), this colloquy describing the nature of the charge will vary depending on various factors. Here, considering the rather simple charge and the clear and intelligible responses given by the appellant we believe that it was sufficient to rely on the appellant's own statements and the arraignment to inform the appellant of the nature of the charge.[8]

### C

■ We have little trouble in concluding that the totality of the conversations between the district court and the appellant was sufficient to inform him of the nature of the charge. But it is clear that at no time at the guilty plea hearing did the district court inform the appellant of the maximum penalty. While this may be an infirmity under Rule 11 in certain instances, we believe that under the particular circumstances of this case this was not a violation of Rule 11.

At the arraignment the appellant was told that the maximum penalty was life imprisonment. The appellant contends that this information could only be conveyed at the time of the guilty plea hearing. In the particular circumstances of this case we reject this contention.

At the arraignment the prosecution told the appellant "[W]ith respect to the punishment, the maximum penalty prescribed by law is any term of years or imprisonment for life." The district court then asked "[D]o you understand what it is the Government has charged you with and the maximum penalty which the law provides?" The appellant answered in the affirmative.

Considering the age and education of the appellant—27 years old and 12 years of education—as well as the rather simple description of the maximum penalty we hold that this information, conveyed at a time other than the guilty plea hearing was sufficient to inform the appellant of the maximum penalty.

*Phillips v. United States*, 519 F.2d 483 (6th Cir. 1975) is distinguishable. In *Phillips* the defendant was not informed of the rights waived by his plea of guilty nor of the consequences of his plea—including the maximum penalty. The court found that these were violations of Rule 11 and refused to rely on the fact that at the arraignment held two weeks before the guilty plea hearing the consequences of the plea were discussed.

At first impression *Phillips* appears to govern the present case. However, *Phillips* also involved the failure to inform the defendant of the rights waived by the plea—

7. Thus, in relying on the appellant's own words to describe the charge and whether he understood the charge, we have no doubt that if the appellant had indicated a misunderstanding of the charge the district court would have promptly informed the appellant.

8. We note also that the appellant was 27 years old, had 12 years of education, and was represented by counsel.

not solely the maximum penalty. The rights waived include the right to trial by jury, the right to confront and cross examine witnesses, and the privilege against self incrimination. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Thus, the defendant in *Phillips* was not informed of these basic constitutional rights waived. The provision of this information at the time of the guilty plea hearing may approach constitutional dimension. In the present case the district court personally at the time the guilty plea was entered, fully informed the appellant of all of the rights waived. The appellant demonstrated that he fully understood the significance of the guilty plea and the rights waived by his guilty plea. Also in *Phillips*, the court was concerned that the failure to inform a defendant of the consequences of his plea (including the maximum penalty) could lead to confusion. The court expressed a concern that a defendant often will plead to a lesser offense than that charged in the indictment. Thus, the possibility for confusion over the maximum penalty arises because the lesser offense pled to may have a different penalty than the charge in the indictment. We appreciate the danger of confusion but note that in this case the maximum penalty was no different from that described at the arraignment. Also, we deal with a simple charge and simple maximum penalty. There was no opportunity for confusion or misunderstanding. Finally, the record presented to us varies from the facts of *Phillips*. We have a defendant who indicated his ability to understand the proceedings and retain the knowledge provided. There is no indication in *Phillips* that the record there presented such a case.

Nor is our determination inconsistent with *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In *McCarthy* the Court indicated that the proper time for providing information to the defendant was at the time of the guilty plea. The concerns in *McCarthy* were twofold. First, the Court wanted to insure that guilty pleas would be voluntary. Providing all of the relevant information at the proper time would insure that pleas would be knowing and voluntary. Second, effective disposition of postconviction attacks on guilty pleas would be hampered by a Rule 11 procedure which included several different hearings. Claims by a defendant could be easily disposed of if the guilty plea hearing transcript clearly stated that the defendant was made aware of the information when the plea was entered.

We acknowledge the salutary purposes to be served by the rule of *McCarthy*. However, our decision in this case does not contravene the spirit of that decision. No reasonable person would doubt that the decision by the appellant was a knowing and voluntary decision. Also, a cursory reading of the record demonstrates the formal nature of the appellant's contentions. It was no great burden on this court to review the record. Indeed, we would consider it a greater burden on our judicial system to vacate this plea and allow the appellant to replead.

We are mindful of the important role that Rule 11 plays in insuring the fair and efficient taking of guilty pleas. Also, nothing we state in this case, nor the result we reach, should be taken as an invitation to slight the requirements of the Rule. We emphasize again, as we have in prior cases, that the district court, no matter how convinced it is that the defendant is knowingly and voluntarily pleading guilty, should completely and literally proceed step by step through the technical requirements of Rule 11. Any other course will risk the likelihood of the conviction being set aside. Here, however, while the case is a close one, we are satisfied that Rule 11 was not violated. On the facts of this case, adoption of a strict and literal reading of the Rule would be to exalt form over substance and further none of the goals that Rule 11 was designed to serve.

We thus conclude that on the particular facts of this case the district court did not violate Rule 11.

The judgment of the district court is affirmed.