**UNITED STATES of America, Appellee,**

v.

**Matthew LYONS, Appellant.**

**No. 93–3202.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 31, 1995.

Decided May 9, 1995.

Michael H. Stone, argued the cause and filed the briefs for appellant.

Gregory A. Gruber, Asst. U.S. Atty., appeared pro hac vice and argued the cause for appellee. With him on brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Elizabeth Trosman and Eric B. Marcy, Asst. U.S. Attys.

Before: BUCKLEY, WILLIAMS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Matthew Lyons was indicted for hiring an undercover police officer to murder a man he

believed to be his wife's lover. In exchange for the government's agreement to dismiss two local-law counts and to refrain from opposing a reduction in his sentence for acceptance of responsibility, Lyons pleaded guilty to one count of violating the federal murder-for-hire statute, 18 U.S.C. § 1958 (Supp. 1992). The transcript of the proceeding in which Lyons entered his plea quotes the trial judge on the subject of the penalty as follows:

> You understand you could be subjected to ten years in prison and a $250 fine and there will be an assessment of $50 over and above that. So that doesn't add much to the $250 that you could have to begin with.

The statement of the maximum prison term was correct, but the statute in fact permits a fine of up to $250,000, and indeed, at sentencing, pursuant to the Sentencing Guidelines, the judge imposed not only a prison term of 97 months and two months supervised release but also a fine of $135,000.

Lyons now challenges his conviction and sentence as based on a plea that was not knowing and intelligent. See Fed.R.Crim.P. 11(c)(1) (requiring court to inform defendant personally of "maximum possible penalty provided by law"). Because the record as a whole makes clear that Lyons was not in fact misled, the error was not prejudicial and therefore not cause for reversal. See Fed. R.Crim.P. 11(h) (error to be "disregarded" if it "does not affect substantial rights"); United States v. Olano, —— U.S. ——, ——, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993) ("substantial rights" generally deemed "affected" only when error was "prejudicial",

that is, "affected the outcome of the District Court proceedings.").[1]

We assume the accuracy of the transcript, although there are famous instances to the contrary[2]; government counsel on appeal informed us that if any electronic recording was made, it no longer exists. Nonetheless, the context of the plea convinces us that Lyons either knew the correct maximum and was not led astray by the court's misstatement or did not consider the amount of the fine a serious factor in his decision to enter the plea. In either event, he would not have refrained from pleading guilty had the court stated the fine correctly, and thus he suffered no prejudice. See United States v. Liboro, 10 F.3d 861, 865–66 (D.C.Cir.1993); United States v. Peden, 872 F.2d 1303, 1309 (7th Cir.1989) ("[I]nsuring that a defendant's plea is voluntary is the purpose of the procedures set forth in Rule 11. We refuse to exalt form over substance, ... and ignore the defendant's clear understanding that restitution could be part of his criminal sentence."); United States v. Grewal, 825 F.2d 220, 222 (9th Cir.1987).

First, defendant was advised of the fine accurately at his arraignment, when the magistrate judge told him that "if you are ultimately found guilty of that offense that you could be sentenced to imprisonment for a period of up to ten years or fined $250,000.00, or both." In United States v. Gray, 611 F.2d 194 (7th Cir.1979), the court refused to set aside a plea entered without a statement of the maximum sentence, in part on the ground that defendant had been told of his maximum exposure at arraignment. Id. at

---

**1.** Here the absence of contemporaneous objection does not trigger "plain error" analysis, under which the appellant would have to show that the error was "clear" and to carry the burden of proof on prejudice. See Olano, —— U.S. at ——–——, 113 S.Ct. at 1777–78. Any deviation from the requirements of Rule 11 is reversible unless the government demonstrates that it was "harmless". See Fed.R.Crim.P. 11(h); see also advisory committee's note to 1983 Amendment (explaining that section (h) was added to modify the rule of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), under which all violations of Rule 11(h) were deemed per se prejudicial).

**2.** At the first trial of Alger Hiss, for example, defense counsel sought to impeach Whittaker

Chambers with the typed transcript of his testimony before the House Committee on Un–American Activities. That transcript recorded Chambers as saying that Hiss had lived at "Dent Place" in Washington, when in fact he had lived at Volta Place. Chambers insisted he had said Volta Place and that the transcript was wrong. Later the government called the stenographer, who testified that his stenotyped notes of that part of Chambers's testimony showed a tear (his regular symbol of doubt), that he had initially recorded "Balt ... Balt Place", and that, after consulting Committee staff, he had entered it as "Dent Place" in the typed transcript. See Alistair Cooke, A Generation on Trial: U.S.A. v. Alger Hiss 136, 173–74 (1950).

201–02; see also *LoConte v. Dugger*, 847 F.2d 745, 751 (11th Cir.1988) (holding that "a guilty plea may be knowingly and intelligently made on the basis of detailed information received on occasions before the plea hearing"). Defense counsel points out, fairly enough, that whereas the gap between arraignment and plea was only a month in *Gray*, here it was five months, presenting a greater risk that defendant might have forgotten the information before his plea. But Lyons's behavior *after* his plea lays that concern to rest.

After the plea but before sentencing, Lyons and his lawyer received a copy of the presentence report ("PSR"). A separate paragraph on the first page of the PSR, captioned "Offense", reads in its entirety as follows:

> *Count One:* Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire (18 U.S.C. § 1958)—10 years/ $250,000 fine.

In the section entitled *"Fines"*, the report unambiguously notes, *"Statutory Provisions:* The maximum fine is $250,000.... *Guideline Provisions:* The fine range for this offense is from $15,000 to $150,000." All of the information about the maximum penalty is listed again, along with the parole officer's recommendation, in a succinct, clearly laid-out chart near the end of the report, under the heading "Sentencing Recommendation".

At the end of the PSR, Lyons acknowledged having reviewed the report and even registered specific objections to three paragraphs that described his state of mind at the time of the crime. Yet he voiced no objection to the paragraphs describing the possible penalty, which would have been almost impossible to miss. Cf. *Peden*, 872 F.2d at 1309–11 (citing, as evidence of defendant's understanding of penalty, defendant's acknowledgement that he had "read and understood" PSR correctly describing penalty).

Finally, neither defendant nor his counsel expressed any surprise when a penalty in the amount of $150,000 was discussed at the sentencing hearing, or when the judge actually imposed one of $135,000. While requesting a departure from the Guidelines, Lyons's lawyer remarked, "we do not dispute that the guidelines in effect were added up

correctly [in the PSR] and that Mr. Lyons's sentence should fall on paper underneath those guidelines." Later the judge engaged in a fairly extensive discussion about the correct fine, first with defendant's lawyer and then with the prosecutor, in the course of which he referred to the PSR's discussion of the monetary penalty, the advisability of fining the defendant the Guidelines maximum of $150,000, and defendant's net worth (together with that of his estranged wife) of $885,-000. At the end of this colloquy with the attorneys, the judge asked Lyons, "Is there anything you would like to say to the Court at this time?" Lyons responded with some claims about the facts of the offense itself, saying that he had not intended to hire a private investigator to commit murder but was "led on" by the undercover police officer. About the amount of the fine—not a word. If defendant was in any way surprised by the colloquy about fines, with its frequent use of six-figure numbers, it seems inconceivable to us that he would not have protested. See *Lucas v. United States*, 963 F.2d 8, 14–15 (2nd Cir.1992) (finding defect of plea proceeding purely "formal" in light of defendant's failure to protest sentencing colloquy that had unequivocally displayed his risk); see also *Peden*, 872 F.2d at 1308; Rule 11(h) advisory committee's note to 1983 Amendment (whether error is harmless determined by examining entire Rule 11 record, including sentencing hearing); cf. *United States v. Pollard*, 959 F.2d 1011, 1020, 1025–28 (D.C.Cir.1992) (giving "due consideration" to defendant's and defendant's counsel's "reactions upon hearing the government's allocution at sentencing in determining whether the government's allocution breached the agreement."). Accordingly, we are confident that the misstatements of the penalty recorded in the transcript of the plea played no role in inducing defendant's decision to plead guilty.

We have considered all of appellant's other contentions and find no merit in them. The conviction and sentence are

*Affirmed.*