Anthony BOYD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–579, 94–CO–1572, 96–CO–768 and 97–CO–728.

District of Columbia Court of Appeals.

Argued Oct. 16, 1997.
Decided Dec. 4, 1997.

David A. Singleton, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Leslie A. Gerardo, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

On April 5, 1994, Anthony Boyd entered a plea of guilty to both counts of a two-count indictment charging him with distribution of heroin and with possession of heroin with intent to distribute it (PWID), in violation of D.C.Code § 33–541(a)(1) (1993). He was sentenced to serve two concurrent terms of imprisonment for from ten to thirty years, with each sentence including a ten-year mandatory minimum. The trial judge ordered that the two concurrent terms be served consecutively to any other sentence.[1]

On direct appeal from his convictions,[2] Boyd contends, *inter alia*, that the trial judge participated in plea negotiations in violation of Super Ct.Crim. R. 11(e)(1), and that the judge's intervention induced Boyd's plea of guilty. Although the case is a close one, we conclude that Rule 11 was violated and that the violation affected Boyd's substantial rights. Accordingly, we reverse.

## I.

### THE TRIAL COURT PROCEEDINGS

Boyd and his codefendant, Steven Barge, were arrested on June 2, 1993 and charged with distribution and PWID. The distribution charge arose from the sale by Barge to an undercover police officer of heroin which Boyd was orally advertising by its street brand name. The PWID charge was based on the recovery by the police of a bag which Barge dropped to the ground before his arrest, and which was found to contain heroin.

Boyd and Barge were indicted by a grand jury on June 17, 1993, and their case was subsequently assigned to a master drug calendar. A defendant who is so assigned has an opportunity to negotiate a plea bargain only until he receives a "final" plea offer from the prosecution. If he declines that offer, then no further plea offer is extended, and the case is reassigned from the master calendar to a trial calendar.

In conformity with master drug calendar procedures, the government extended plea offers to both Boyd and Barge. The offers were "wired," which meant that each offer was contingent on the acceptance by both defendants of the terms offered by the government. Although Barge was apparently willing to accept the plea offer, Boyd was not. There having been no agreement on a plea, the case was certified to the trial judge, Honorable Evelyn E.C. Queen, for disposition of pretrial motions and for trial.

The trial judge heard and denied the defendants' motions to suppress evidence and identification. The judge then asked the prosecutor whether sentencing enhancement papers had been filed. In response to the judge's inquiry, the prosecutor served on Boyd's attorney informations alleging that Boyd had two prior felony convictions, that he was a repeat drug offender, and that he

---

1. Boyd had previously been sentenced by Judge Gregory E. Mize to serve ten to thirty years in another case. As a result of the sentence imposed by Judge Evelyn E.C. Queen in the present case, Boyd was to serve an aggregate term of twenty to sixty years.

2. Boyd's direct appeal, No. 94–CF–579, has been consolidated with related appeals from the trial

judge's subsequent denial of his motion to modify the sentence, No. 94–CO–1572, and from the judge's oral and written orders denying Boyd's motion to withdraw his guilty plea, Nos. 96–CO–768 and 97–CO–728. Our disposition of Boyd's direct appeal renders the subsequent appeals moot.

was subject, upon conviction, to a mandatory minimum sentence of ten to thirty years on each count. *See* D.C.Code §§ 22–104(a) (1996); 33–548 and 33–541(c) (1993). Boyd's attorney did not contest the accuracy of the informations, and it thus became apparent that Boyd was confronting the possibility that he would have to serve a very long term of imprisonment.

Following the foregoing illumination of what was at stake for Boyd, the judge inquired:

> Counsel, I assume you've explained all this to your clients and they understood when they rejected—I believe it was Judge Hamilton they were first before—and they rejected all [plea] offers, that all bets were off. Right?

Barge's attorney replied that his client had not had an opportunity to accept the "wired" plea offer because Boyd had declined to enter a guilty plea. Boyd's counsel stated that he had not represented Boyd "through the plea calendar." The judge then remarked that, "as I understand the new rules you cannot plead at this point." The prosecutor explained:

> Your Honor, they can always plead to the charges in the indictment. I suppose Mr. Boyd's hope would be to get a concurrent sentence to the ten years [he's] already facing.[3]

> Mr. Barge's hope, I guess, would be to get the addict exception so he's out from under the mandatory 7. But at this point the government—under this new system is not allowed to actually make him a plea offer.

THE COURT: Okay. And of course [Boyd's counsel], you explained to him when you got certified over here what my sentencing structure is like?

[BOYD'S COUNSEL]: Well, I haven't had a chance to tell him yet, your Honor.

THE COURT: You might as well tell him. That here "concurrent" is a word I rarely use.

[BOYD'S COUNSEL]: You're talking about if they lose at trial, your Honor. Right?

THE COURT: *If they lose at trial "concurrent" is a word I rarely use after a trial.*

(Emphasis added.) Following this colloquy, which disclosed to Boyd that if he was convicted at trial, he would in all probability be facing aggregate consecutive mandatory minimum sentences of thirty years, the judge recessed the proceedings for lunch.

After the luncheon recess, Boyd's counsel announced that his client would enter a guilty plea. Because the government would not extend any plea offer to either defendant, Boyd agreed to plead to the indictment. During the course of the Rule 11 inquiry that followed, Boyd acknowledged the truth of the prosecutor's proffer of evidence, and he admitted his guilt of the offenses charged. In response to the judge's questions, Boyd also stated that he was "clear-headed" and "sober," that he had discussed his options with his attorney, that he understood that by pleading guilty he was giving up certain specified constitutional rights, that he knew that he could be incarcerated for life, that he had not been threatened in any way to induce his plea, that nobody had promised him what his sentence would be, and that he was pleading guilty of his own free will. The judge formally accepted Boyd's plea, and she subsequently sentenced Boyd to concurrent terms of ten to thirty years, which were to be served consecutively to the sentence previously imposed by Judge Mize.[4] Boyd filed a timely notice of appeal.

## II.

### RULE 11(e)(1)

Rule 11(e)(1) of the Superior Court's Rules of Criminal Procedure provides in pertinent part that "[t]he prosecutor and the attorney

---

3. See note 1, *supra.*

4. Boyd subsequently filed a motion to modify his sentence, and he requested the judge to order that the concurrent sentences imposed by her be permitted to run concurrently with Judge Mize's

sentence. In its response, the government indicated that it had no objection to the three sentences running concurrently. The judge, however, denied Boyd's motion.

for the defendant ... may engage in discussions with a view towards reaching [a plea] agreement...." The Rule further states that "[t]he Court shall not participate in any such discussions."[5] The principal question in this case is whether the trial judge violated the foregoing prohibition.

■ "[T]he main purpose underlying Rule 11 is to prevent coerced guilty pleas." *German v. United States*, 525 A.2d 596, 602 (D.C.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).[6] Rule 11(e)(1)

> leaves no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.

*Id.* at 600 (quoting *United States v. Werker*, 535 F.2d 198, 201 (2d Cir.), *cert. denied*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976)). The Rule was

> obviously intended totally to eliminate pressures emanating from judicial involvement in the plea bargaining process, and this necessarily includes any involvement of the court in divulging pre-plea sentence proposals which are equally likely to generate such pressures.

*Werker, supra,* 535 F.2d at 203.

■ Judicial intervention is proscribed because a judge's participation in plea negotiations is "inherently coercive." *United States v. Barrett*, 982 F.2d 193, 194 (6th Cir.1992). This court has recognized that

> [t]he unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence.

*German, supra,* 525 A.2d at 600 n. 5 (quoting Advisory Committee's Notes to 1974 Amendment to Fed.R.Crim.P. 11(e)(1)) (quoting *United States ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y.1966)).

The Due Process Clause of the Fifth Amendment also places restrictions on the involvement of a trial judge in this area. "The constitutional concern is that judicial participation in plea negotiations not be so great as to render a guilty plea involuntary." *Wilson v. United States*, 592 A.2d 1009, 1012 (D.C.) (per curiam), *cert. denied*, 502 U.S.

---

5. In its entirety, the Rule provides:

> (e) Plea agreement procedure. (1) In general. The prosecutor and the attorney for the defendant or the defendant when acting *pro se* may engage in discussions with a view toward reading an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the prosecutor will do either or both of the following:
>> (A) Move for dismissal of other charges; or
>> (B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the Court.
> *The Court shall not participate in any such discussions.*

Super.Ct.Crim.R. 11(e)(1) (emphasis added).

6. In *United States v. Daigle*, 63 F.3d 346, 348 (5th Cir.1995), the court elaborated on the policies underlying Fed.R.Crim.P. 11(e)(1):

> First, it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea. [*United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir.1993).] Second, the judge's involvement in the negotiations is apt to diminish the judge's impartiality. By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice. *Id.* Third, the judge's participation creates a misleading impression of his role in the proceedings. *Id.* The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins in the negotiations. Because of these potential problems, "Rule 11(e)(1) draws a bright line, prohibiting judicial participation in plea negotiations." *Id.*

Super.Ct.Crim.R. 11(e)(1) is substantively identical in this respect to its federal counterpart. In interpreting the local rule, we look to the decisions of federal courts construing Fed.R.Crim.P. 11(e)(1). *German, supra,* 525 A.2d at 600 n. 4.

1017, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991) (quoting *United States v. Adams*, 634 F.2d 830, 836 n. 3 (5th Cir.1981)). The Constitution does not forbid a "moderate type of [judicial] participation in plea negotiations," *German, supra*, 525 A.2d at 601 n. 6 (citation and internal quotation marks omitted), but the protections provided by Rule 11 are significantly broader. *Id; see also Wilson, supra*, 592 A.2d at 1012 (Rule 11's prohibition is "far more stringent" than that provided by the Due Process Clause).

■ The prohibition against judicial participation in plea bargaining thus promotes the values served by the Due Process Clause, strengthens the prophylactic scheme established by Rule 11, and "helps to insure that involuntary, unknowing and unfounded guilty pleas will not be entered." *United States v. Adams*, 634 F.2d 830, 838–39 (5th Cir.1981). In light of its preventive purpose, Rule 11(e)(1) draws a "bright line," *Daigle, supra*, 63 F.3d at 348, and it "admits of no exceptions." *United States v. Bruce*, 976 F.2d 552, 558 (9th Cir.1992).

### III.

### ANALYSIS

A. *Standard of review.*

Prior to filing his notice of appeal in No. 94–CF–579, Boyd raised no objection in the trial court to the actions of the judge which he now challenges as coercive and as being in violation of Rule 11(e)(1). Ordinarily, a defendant's failure to present to the trial judge a point on which he bases his appeal would implicate the exacting "plain error" standard. *See United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). Nevertheless, we do not apply that standard in this case.

■ The plain error rule was designed, in substantial part, to ensure that the trial judge is apprised of any alleged error on his or her part and has an opportunity to correct the error and avoid an unnecessary appeal. *See, e.g., Dixon v. United States*, 565 A.2d 72, 80 (D.C.1989). In the present case, however, a defense objection to the judge's description of her sentencing practices would not have served that purpose. Once the trial judge had told Boyd that, so far as she was concerned, concurrent sentences would be more or less ruled out if he went to trial and lost, there was nothing that she could do to cure the harm. Presumably, the judge's statement accurately conveyed to Boyd what was likely to happen if the jury convicted him, and Boyd understood what the judge was telling him. In other words, the cat was out of the bag. Even if Boyd's counsel had objected to the judge's comment, and even if the judge had sustained the objection, the message would still be out there, loud and clear.

■ Under these circumstances, we agree with the court in *United States v. Lyons*, 311 U.S.App. D.C. 357, 53 F.3d 1321 (1995) that, where a direct appeal from a conviction is based on an alleged Rule 11(e)(1) violation,

> the absence of contemporaneous objection does not trigger "plain error" analysis, under which the appellant would have to show that the error was "clear" and to carry the burden of proof on prejudice.

*Id.* at 358 n. 1, 53 F.3d at 1322 n. 1 (citing *Olano, supra*, 507 U.S. at 732–35, 113 S.Ct. at 1776–78); *accord, United States v. Dewalt*, 320 U.S.App. D.C. 68, 71–73, 92 F.3d 1209, 1212–14 (1996) (substantial noncompliance with Rule 11 constitutes basis for reversal on direct appeal);[7] *cf. Bruce, supra*, 976 F.2d at 554 ("a district court's failure to follow Rule

---

7. A defendant who first seeks to set aside his guilty plea in a post-sentencing motion must establish that vacation of the plea is necessary to correct a "manifest injustice." Super. Ct.Crim. R. 32(e), *Dewalt, supra*, 320 U.S.App. D.C. at 71, 92 F.3d at 1212 (citations omitted). It may at first seem "incongruous" that, where there has been substantial noncompliance with Rule 11, a defendant can escape that burden, even after sentencing, merely by filing a timely notice of appeal. *Id.* at 72, 92 F.3d at 1213. The court

held in *Dewalt*, however, that this was the result intended by the drafters of the Rule, in part because "the public interest in the finality of a guilty plea is of somewhat lesser weight when a direct appeal (as opposed to a [collateral attack]) is involved." *Id.* (citations and internal quotation marks omitted). We note that, on direct appeal, the "harmless error" standard set forth in Rule 11(h) assures that the plea will not be set aside for non-prejudicial violations. *Id.;* see also discussion in part III. C, *infra*.

11(e)(1) is 'plain error' reviewable for the first time on appeal").

### B. *Boyd's plea and the judge's role.*

Rule 11(e)(1), as we have seen, provides that the prosecutor and defense counsel may engage in discussions with a view to reaching a plea agreement, but that the judge shall not participate in "such discussions." Although a plea agreement within the meaning of Rule 11(e)(1) was still theoretically possible in the present case at the time the judge made the comments of which Boyd complains, it is undisputed that, by then, the conventional time for negotiating plea agreements had already elapsed. Indeed, the case had been certified to the judge from the master calendar—the "plea calendar," as Boyd's attorney euphemistically described it—with a view to trial, not settlement. Moreover, it is not at all clear that, in explaining her "sentencing structure," the judge specifically intended to initiate new settlement discussions, although the potential impact of her remarks was surely foreseeable. The government thus argues, with some justification, that the situation before us differs materially from those cases in which the trial judge actively attempted to induce a defendant to plead guilty, *see, e.g., Byrd v. United States,* 377 A.2d 400, 402–03 (D.C.1977); *United States v. Garfield,* 987 F.2d 1424, 1427 (9th Cir.1993); *cf. United States v. Casallas,* 59 F.3d 1173, 1176 (11th Cir.1995), or commented on the strength or weakness of the government's case, *German, supra,* 525 A.2d at 599. This appeal, the government suggests, does not present the kind of situation at which Rule 11(e)(1) was directed.

■ We are satisfied, however, that taken as a whole, the events that began with the judge's inquiry about enhancement papers and ended with the luncheon recess became "plea discussions" in which the judge eventually "participated" in a major way. In response to a question from the judge, the prosecutor outlined the terms under which the defendants could still plead guilty, and he undertook to describe the possible benefits that might accrue to them even after a belated plea to the indictment. The judge, undoubtedly hoping to ensure that each defendant could make a fully informed decision, described in rather vivid terms the likely consequences of *not* pleading guilty but being found guilty. After Boyd's attorney asked the judge for clarification, the judge made explicit a fact that was already clearly implicit, namely, that her comment that defendants should not expect concurrent sentences, because "concurrent" was a word that the judge rarely used, was directed to those defendants who went to trial and lost.[8] The court and counsel thus all ultimately involved themselves in plea discussions, and the judge's observation about the rarity of concurrent sentences for defendants who did not plead guilty transgressed the command of Rule 11(e)(1) that the judge "should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to [her] of a plea agreement." *German, supra,* 525 A.2d at 600 (quoting *Werker, supra,* 535 F.2d at 201).

### C. *Harmless error.*

■ Like its federal counterpart, Super. Ct.Crim. R. 11(h), which is entitled *"Harmless Error,"* provides that "[a]ny variance from the procedures required by this Rule which does not affect substantial rights shall be disregarded." Section (h) was added to Fed.R.Crim.P. 11 in 1983 in response to *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), a case which some courts [9] had read as holding that all violations of Rule 11 were prejudicial *per se. See Lyons, supra,* 311 U.S.App. D.C. at 358 n. 1, 53 F.3d at 1322 n. 1. The burden is on the prosecution to demonstrate harmlessness. *Id.* Failure to comply with Rule 11(e)(1) affects substantial rights if the

---

8. The judge's meaning was apparent from the context even before the "clarification," and we do not agree with the government's argument that Boyd, through his attorney, invited the error of which he now complains.

9. Not all courts took this view. *Compare United States v. Coronado,* 554 F.2d 166, 172–73 (5th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977), *with United States v. Boone,* 543 F.2d 1090, 1091 & n. 1 (4th Cir.1976).

judge's participation "may reasonably be viewed as having been a material factor affecting the defendant's decision to plead guilty." *Daigle, supra,* 63 F.3d at 349.

■ In the present case, the government has not met its burden. Indeed, the sequence of events persuasively refutes any inference that the judge's comments had no influence on Boyd's decision to enter a plea. During the conventional plea-bargaining period, which occurred before the case was transferred from the master drug calendar to the trial calendar, Boyd was unwilling to accept the government's plea offer, even though that offer presumably contained some *quid pro quo* from the prosecution in return for an agreement on his part to plead guilty.[10] This was Boyd's posture when he and his counsel came before the trial judge for disposition of pretrial motions and for trial. Shortly before lunch on the day of the plea, the judge, who had not previously been involved in the case in any way, made remarks that conveyed to Boyd that he had little or no prospect of receiving concurrent sentences if he went to trial and lost.

Immediately after the lunch recess, Boyd, who had been unwilling, prior to the judge's comments, to accept even an offer containing prosecutorial concessions, was now ready to swallow the bitter pill of pleading to both counts of the indictment without any promises at all from the government. In this case, as in *Casallas, supra,* 59 F.3d at 1178, "[Boyd's] change of heart from his initial rejection of a guilty plea to his subsequent decision to plead guilty occurred directly on the heels of the [trial] court's participatory comments." We cannot presume that this timing was a coincidence, particularly since the government has the burden of proof on the point.

The government argues that the trial judge was doing no more here than advising Boyd and Barge that she followed the American Bar Association's Standards for Criminal Justice (ABA Standards) for pleas of guilty. These standards provide that it is "proper for the court to grant … sentence conces-

sions to defendants who enter a plea of guilty" when "there is substantial evidence to establish that … the defendant is genuinely contrite and has shown a willingness to assume responsibility for his or her conduct…." *Coles v. United States,* 682 A.2d 167, 169 (D.C.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 751, 136 L.E.2d 688 (1997) (quoting ABA Standards, Vol III, 2d ed., Ch. 14, Standard 14–1.8(a)(i)). The government apparently suggests that even if, in explicating her adherence to these standards, the judge technically violated Rule 11(e)(1), the violation inured to Boyd's benefit, and not to his prejudice, because it enabled him to make a realistic and informed choice as to whether or not he should plead guilty. The point is grounded in reality, for if Boyd had gone to trial, and if he had been convicted, he might well have been sentenced to serve an aggregate mandatory minimum term of thirty years, rather than twenty.

We have no reason to doubt that the judge's comments were designed to achieve candor in sentencing and to discourage the defendant from making a potentially improvident choice which he might well come to rue. Even the most compassionate and benign judicial motivation, however, will not save a plea which was brought about by a violation of Rule 11(e)(1). *Bruce, supra,* 976 F.2d at 558; *Garfield, supra,* 987 F.2d at 1427. The concern "that [the defendant] be thoroughly apprised of the situation that he face[s], … however well-intentioned, [must] be addressed by someone other than the judge before whom the defendant is to plead guilty and be sentenced," (*e.g.,* by the defendant's attorney). *Casallas, supra,* 59 F.3d at 1178.

When a judge elects to address the subject of differential treatment for defendants who plead guilty, as compared to those who are convicted after trial, he or she enters a difficult and sensitive area in which precision of expression is essential. Professor Moore has written:

> The line between the *promise* of a particular sentence if the defendant will plead guilty, and the *threat* of a particular sen-

---

**10.** The terms of the government's plea offer are not in the appellate record, but it is apparent from the discussion between counsel that that offer was more favorable to Boyd than the prosecutor's ultimate insistence that Boyd plead guilty to both counts of the indictment.

tence if the defendant goes to trial is, at best, indistinct. What is certain is that a plea induced by an advanced judicial threat of a specific and harsher punishment if the defendant proceeds to trial renders the plea involuntary.

24 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 611.07[3], at 611–62 (3d ed.1997) (emphasis in original). This court recently stated that "[t]he augmentation of sentence based on a defendant's decision to stand on his right to put the [g]overnment to its proof rather than plead guilty is clearly improper." *Coles, supra,* 682 A.2d at 169 (citations and internal quotation marks omitted).

In the present case, the judge's colloquial [11] approach to the subject, and her sardonic reference to "concurrent" as a term that she "rarely" used, could reasonably have suggested to the defendant that the judge would not hesitate much before making him pay a price for going to trial. *Cf. Dewalt, supra,* 320 U.S.App. D.C. at 71, 92 F.3d at 1212 (describing the trial court's task as a "solemn" one). In our view, the style and timing of the judge's announcement [12] compounded the pressure on Boyd to plead guilty and, contrary to the government's claim of harmless error, further implicated Boyd's substantial rights.

### IV.

### CONCLUSION

For the foregoing reasons, the judgment in No. 94–CF–579 is reversed and the case is remanded with directions to vacate Boyd's plea of guilty and sentence and for further proceedings consistent with this opinion.

The appeals in Nos. 94–CO–1572, 96–CO–768, and 97–CO–728 are dismissed as moot.

*So ordered.*[13]

---

11. In fairness to the judge, one might as easily use the adjective "candid." The judge obviously attempted to convey her message in terms that those who heard would readily understand. At a subsequent hearing on Boyd's motion to withdraw his plea, the judge retrospectively described the point she had been making: "All I did was tell him ..., so there would be no misunderstandings, that before trial there is a discount policy with this court. After trial, no sales, no discounts."

12. Nothing in this opinion is intended to imply disapproval of advance disclosure of a trial judge's sentencing policies (with respect to the ABA Standards or otherwise), *e.g.,* in a carefully

crafted memorandum of policies and practices provided to counsel at an early stage of the proceedings.

13. In light of our disposition, we do not reach Boyd's second contention, namely, that his plea was invalid because the judge failed to advise him of the applicability of certain mandatory minimum sentencing provisions.

Lest the issue arise again upon remand, we specifically reject Boyd's contention that the trial judge's comments amounted to an implied promise that, if Boyd entered a guilty plea, any sentence he received would run concurrently with the sentence previously imposed by Judge Mize.