**UNITED STATES of America, Appellee,**

v.

**Wesley B. DEWALT, Appellant.**

No. 95–3103.

United States Court of Appeals, District of Columbia Circuit.

Argued April 4, 1996.

Decided August 20, 1996.

Carmen D. Hernandez, Assistant Federal Public Defender, Beltsville, MD, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, Washington, DC, was on the briefs.

Thomas C. Black, Assistant United States Attorney, Washington, DC, argued the cause for appellee. Eric H. Holder, Jr., United States Attorney, Washington, DC, John R. Fisher, San Francisco, CA, Roy W. McLeese, III, Washington, DC, William M. Sullivan, Jr., Washington, DC, and Leanne Shaltis, Assistant United States Attorneys, Los Angeles, CA, were on the brief.

Before: WALD, GINSBURG, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

Dissenting opinion filed by Circuit Judge HENDERSON.

GINSBURG, Circuit Judge:

Wesley Dewalt pleaded guilty to one count of unlawfully possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). The district court sentenced Dewalt to 33 months in prison, to be served after he completes an unrelated state sentence. Dewalt asks this court to vacate the plea on the ground that the district judge who presided at the plea hearing failed in two respects to comply with Rule 11 of the Federal Rules of Criminal Procedure. Dewalt also challenges his sentence as inconsistent with the United States Sentencing Guidelines. Because we conclude that the district court failed, in violation of Rule 11(c)(1), adequately to notify Dewalt of the nature of the charge to which he was pleading guilty, we vacate the plea without reaching Dewalt's other claims.

## I. Background

At Dewalt's plea hearing the Government said it could prove the following facts: Police officers observed Dewalt carrying a blue tote bag through a bus terminal in Washington, D.C. The bag looked "a little odd" to the officers, and Dewalt appeared to them to be "having difficulty carrying [it]." The officers approached Dewalt, and asked for and received his permission to search the bag. Inside the officers found a J.C. Higgins .16 gauge bolt action shotgun with a sawed-off barrel 16¼ inches long, and several rounds of ammunition. A check with the National Firearms Registry revealed that neither the shotgun nor the ammunition was registered.

Based upon Dewalt's possession of this weapon and ammunition, the Government obtained a three-count indictment charging him with one violation of federal law, 26 U.S.C. § 5861(d) (unlawful possession of an unregistered firearm), and two violations of the District of Columbia Code, §§ 6–2311(a) (same) and 6–2361(3) (unlawful possession of unregistered ammunition). Dewalt pleaded guilty to the federal charge in exchange for which the Government agreed to dismiss the two D.C. charges. On appeal Dewalt argues that his guilty plea was not taken in accordance with the requirements of Rule 11.

## II. Analysis

A guilty plea is not "voluntary in the sense that it constitute[s] an intelligent admission that [the defendant] committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process'." Henderson v. Morgan, 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976), quoting Smith v. O'Grady, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). "Real notice of the true nature of the charge" means notice sufficient to give the defendant "an understanding of the law in relation to the facts" of his case, McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Specifically, a defendant's ignorance of the mens rea element of the offense with which he is charged renders his guilty plea involuntary as a matter of constitutional law. Henderson, 426 U.S. at 645–46, 96 S.Ct. at 2258 (defendant did not know that to convict him of second-degree murder state would have to prove he assaulted victim "with a design to effect [ ] death"); see also United States v. Frye, 738 F.2d 196, 199–201 (7th Cir.1984) ("the defendant was waiving her right to make the prosecution prove to a judge or jury beyond a reasonable doubt not only that she participated in the check-kiting scheme, but also that she did so with a culpable state of mind").

That the defendant's guilty plea is constitutionally infirm if he pleaded without understanding the nature of the offense charged does not imply a constitutional obligation on the part of the court to inform the defendant about the nature of the charge, Henderson, 426 U.S. at 644, 96 S.Ct. at 2257. In federal courts, however, Rule 11 prescribes a procedure "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary ... [and] to produce a complete record at the time the plea is entered of the factors relevant to this

voluntariness determination." *McCarthy,* 394 U.S. at 465, 89 S.Ct. at 1170. Indeed, "Rule 11 is designed to eliminate any need to resort to a later [*i.e.,* post-conviction] fact-finding proceeding in [the] highly subjective area of voluntariness." *Id.* at 469, 89 S.Ct. at 1172. To this end, Rule 11(c)(1) requires that the district judge who presides at the plea hearing inform the defendant of "the nature of the charge to which the plea is offered."

■ Neither Rule 11 nor the case law, however, specifies the minimum that a district judge must do to inform the defendant of the nature of the charge in question; rather, the plea hearing must meet a standard aptly stated by the Seventh Circuit: "[A] court must have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge." *Frye,* 738 F.2d at 201. *See also United States v. Dayton,* 604 F.2d 931, 937–38 (5th Cir.1979) (en banc); *United States v. Marks,* 38 F.3d 1009, 1011–12 (8th Cir.1994) (where record shows defendant understood charge, court's failure to describe charge with greater specificity does not require reversal); *United States v. Musa,* 946 F.2d 1297, 1304 (7th Cir.1991) ("totality of the circumstances").

Dewalt pleaded guilty to a charge that he violated 26 U.S.C. § 5861(d), which makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." As used in the statute, a "firearm" is defined as any weapon of a type listed at 26 U.S.C. § 5845(a). In this case, the Government charged that Dewalt possessed a firearm of the sort described in § 5845(a)(2)—namely, "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." More specifically, the Government charged Dewalt with having possessed a sawed-off shotgun with a barrel length of less than 18 inches.

The Government concedes that one of the elements it must prove in order to obtain a conviction under the charge is that when Dewalt possessed the weapon he knew that it had a barrel less than 18 inches long. We find that proposition dubious, *see United States v. Barr,* 32 F.3d 1320 (8th Cir.1994), *but see United States v. Edwards,* 90 F.3d 199 (7th Cir.1996); *United States v. Mains,* 33 F.3d 1222 (10th Cir.1994); *United States v. Imes,* 91 F.3d 1210 (9th Cir.1996), *vacating* 80 F.3d 1309, but the Government's express and unequivocal concession on this point leaves us without occasion to rule otherwise. Dewalt says that the district judge who presided at his plea hearing failed to inform him of this knowledge element and thus failed to comply with Rule 11(c)(1).

■ The district judge appears to have approached his solemn task with a somewhat casual attitude. He did not describe the nature of the charge to Dewalt and ascertain that Dewalt understood. Indeed, the judge did not even mention that the charge to which Dewalt was pleading concerned possession of a weapon, much less possession of a sawed-off shotgun with a barrel less than 18 inches long. Instead the judge asked Dewalt only whether he had received a copy of the indictment and whether he understood the charges contained therein; he did not squarely ask even whether Dewalt had read the indictment or whether he was relying upon counsel's (or anyone else's) representations regarding what it said. Nothing in the transcript of the plea colloquy, including the prosecutor's factual proffer, "would lead a reasonable person to believe that [Dewalt] understood" that the Government intended to (or, more to the point, was required to) prove that Dewalt knew at the time he possessed the shotgun that the barrel had been sawed-off and was less than 18 inches in length.

The Government argues that because Dewalt raised this issue for the first time after sentencing, he must show that vacating his plea is necessary to correct a "manifest injustice." The 1983 Amendments to the Federal Rules of Criminal Procedure do make it clear that once the district court has imposed sentence, the defendant's sole vehicle for obtaining relief in the district court is a motion under 28 U.S.C. § 2255. And in *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), the Supreme

Court stated that in order to prevail under § 2255, a defendant must show that the plea proceeding was tainted either by "a fundamental defect which inherently results in a complete miscarriage of justice" or by "an omission inconsistent with the rudimentary demands of fair procedure."

■ The defendant is not appealing the denial of a § 2255 motion, however. On a direct appeal after sentencing, such as this, however, we must grant the defendant relief from the district court's failure to comply with Rule 11 unless the error was harmless. That a defendant can escape the burden of showing a manifest injustice merely by filing a notice of appeal within the allotted time might at first seem incongruous, but that is just what the Advisory Notes accompanying the 1983 Amendments indicate—at least where the claim is that the district court has failed substantially to comply with Rule 11. The note accompanying the amendment to Rule 11(h) (harmless error "shall be disregarded") explains: Because the public interest in the finality of a guilty plea is "of somewhat lesser weight when a direct appeal [as opposed to a § 2255 motion] is involved ... the *Hill* standard is obviously inappropriate in that setting"; on the other hand, the finality interest on direct appeal is "sufficiently compelling to make unsound the proposition that reversal is required even where it is apparent that the Rule 11 violation was of the harmless error variety."

The seeming incongruity of giving the defendant a break on direct appeal is further diminished once one realizes that, whereas Rule 32(e) governs motions to withdraw generally, Rule 11(h) governs the special case of a motion to withdraw based upon the district court's substantial non-compliance with the requirements of Rule 11. *See United States v. Jaramillo–Suarez,* 857 F.2d 1368, 1370 n. 2 (9th Cir.1988) (defendant's burden in challenge to guilty plea based upon Rule 11 greater in collateral attack than on direct appeal); *United States v. Martinez–Martinez,* 69 F.3d 1215, 1219–20 (1st Cir.1995) (recognizing but reserving question of which standard applies on direct appeal). A direct appeal based upon Rule 11 is subject to a different standard because Rule 11 cracks

open the door behind which plea bargains are struck; appellate review and supervision of guilty pleas is facilitated by the district court's making a record from which we can discern whether the defendant's plea was knowing and voluntary. That record provides at least formal assurance that the plea is not wholly the product of the defendant's confusion or the prosecutor's deceit.

The Government points to a statement in our decision in *United States v. Farley,* 72 F.3d 158 (1995), that appears to contradict the Rules Advisory Committee on this point. *See id.* at 162 ("On direct appeal the defendant must show that withdrawal of his plea is necessary to correct a 'manifest injustice' "). Later in that same opinion, however, the court recognized that the harmless error standard applies to Rule 11 claims. *Id.* at 163. Indeed, the court concluded that "setting aside Farley's plea [was not] necessary to correct a manifest injustice because any variance from Rule 11's provisions was harmless, at most." *Id.* Although the court also noted that Farley had failed to "advance an objectively reasonable argument that he is innocent," the "more important" reason for concluding that any error was harmless was that the district court had adequately determined that Farley's plea was voluntary. *Id.* In substance, therefore, *Farley* is not inconsistent with the commentary to Rule 11 indicating that on direct appeal the Government must show that a Rule 11 violation was harmless in order to prevail; indeed in *United States v. Lyons,* 53 F.3d 1321, 1322 n. 1 (1995), in which the Government argued that a departure from Rule 11 warrants reversal only if it rises to the level of plain error under *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we stated expressly that "[a]ny deviation from the requirements of Rule 11 is reversible [on direct appeal after sentencing] unless the government demonstrates that it was 'harmless'."

■ In order to show that a Rule 11 violation caused no harm, of course, the Government must show that the error did not affect the outcome of the district court proceeding. *Lyons,* 53 F.3d at 1322. A district court's failure to comply with Rule 11(c)(1) is harm-

less if the record reveals either that the defendant had actual notice of the information that the district judge failed to convey or that the information would not have been important to the defendant. *See, e.g., United States v. Liboro,* 10 F.3d 861, 864 (D.C.Cir. 1993) ("*Liboro* was sufficiently apprised of the charges and comprehended them"); *Lyons,* 53 F.3d at 1323 (defendant's failure to protest at sentencing indicates that amount of fine had not been important factor in decision to plead guilty).

█ The record in this case permits neither inference, however. Because the district court dispensed with any substantive colloquy at Dewalt's plea hearing, the indictment is the one item in the record that merits attention in this regard, and it is at best ambiguous concerning the mens rea element of the charge. In the indictment the Government charged that Dewalt

> knowingly received and possessed a firearm, that is, J.C. Higgins sawed-off shotgun, with an overall length of 29¼ inches and a barrel length of 16½ inches, which had not been registered to him....

What terms are modified by "knowingly" in this passage? "Received and possessed" for sure, but what about "with ... a barrel length of 16½ inches"? The indictment is not clear on that, and the more obvious reading is that the adverb "knowingly" modifies only the verbs, not the adjectival phrase. In any event, Dewalt's affirmative response when asked at the plea hearing whether he understood this charge is a poor indicator indeed of what he really understood. Unlike the jury instruction that the Tenth Circuit approved in *Mains,* 33 F.3d at 1229 ("knowingly possessed a shotgun with a barrel length of less than 18 inches or an overall length of less than 26 inches"), Dewalt could reasonably have read the indictment as charging him with knowing possession of a firearm that, whether he knew it or not, happened to be a sawed-off J.C. Higgins shotgun with an overall length of 29¼ and a 16½ inch barrel. In other words, the indictment appears first to describe the crime and then to describe the evidence. There is no reason for Dewalt to have inferred even that "a barrel length of 16½ inches" is a substantive element of the crime, much less that his knowledge of that fact is also an element. After all, that J.C. Higgins manufactured the shotgun and that the overall length was 29¼ inches are merely descriptive details—they do not bring the weapon within the statutory definition of a "firearm," and are therefore irrelevant to the sufficiency of the charge.

Moreover, if Dewalt did not read the indictment to say that he had to know that the barrel was less than 18 inches, then nothing that occurred at his plea hearing would have informed him that he misunderstood the charge. At the plea hearing Dewalt was in the same position, vis-a-vis the indictment, as a student who emerges from a French movie impressed with how much of it he understood; without some authoritative guidance, he cannot know whether he understood anything correctly.

The Government argues that the charge against Dewalt was "not unduly complicated" and Dewalt was represented throughout by competent counsel who "concurred" in Dewalt's decision to plead guilty. As noted earlier, however, one purpose of Rule 11 is to create a record that clearly establishes whether the defendant made an intelligent and voluntary plea. That purpose would be ill-served by our surmising that a court's failure to comply with Rule 11(c)(1) was harmless because competent counsel would have advised his or her client of the "nature of the charge." *See Harvey v. United States,* 850 F.2d 388, 395 (8th Cir.1988) ("the court should have explained the charges ... instead of relying on counsel").

Finally, the Government observes that Dewalt has not claimed that he is innocent or that he would not have pleaded guilty had he been apprised of the mens rea element in the charge against him. That observation would be compelling if Dewalt had the burden of demonstrating a manifest injustice, but here, as we have explained, the Government has the burden of persuading us that the Rule 11 error did not affect the outcome of this prosecution. "[W]here [a] defendant has shown his plea was taken in violation of Rule 11, we have never hesitated to correct the error," even if the defendant failed to assert a legally cognizable defense. *United States v.*

*Cray,* 47 F.3d 1203, 1207 (D.C.Cir.1995). Moreover, nothing in this record indicates whether Dewalt, had he understood the knowledge element of the charge, would nonetheless have pleaded guilty—nor, for that matter, whether the Government, if forced to go to trial, could prove that Dewalt knew at the time he possessed the shotgun that the barrel had been sawed-off to a length of less than 18 inches.

### III. Conclusion

Because the district court failed to comply with Rule 11(c)(1) at Dewalt's plea hearing we must vacate his plea. We need not, therefore, address his argument under Rule 11(f) (district court must make "such inquiry as shall satisfy it that there is a factual basis for the plea"), or his claims of sentencing error. Accordingly, Dewalt's conviction is vacated and this case is remanded to the district court for further proceedings consistent with the foregoing opinion.

*So ordered.*

KAREN LeCRAFT HENDERSON, Circuit Judge, dissenting:

Wesley B. Dewalt was caught in possession of an operable, unregistered sawed-off shotgun. Because the barrel measured under 18 inches in length—16½ inches, to be precise—the weapon fit within the definition of "firearm" contained in the National Firearms Act, *see* 26 U.S.C. § 5845(a)(1), (Act) and Dewalt was charged with possession of an unregistered firearm in violation of section 5861(d) of the Act. He pleaded guilty. He now asks us to vacate his plea on the ground that his plea hearing was not in substantial compliance with rule 11 of the Federal Rules of Criminal Procedure. First, he contends that the district court could not have satisfied itself that there was a factual basis for his plea, as required by rule 11(f), because no evidence was proffered at the rule 11 hearing to show that he knew the barrel was under 18 inches. Second, he contends that the court failed to inform him of, and determine that he understood, the nature of the charge, as required by rule 11(c)(1), because the court did not explain that the government had to prove he knew the barrel was under 18 inches. In short, Dewalt complains that the court failed both to establish a factual basis for and to explain fully the elements of the crime to which he pleaded guilty.

But Dewalt misstates the mens rea element of the crime and unfortunately the majority follows suit. As I read *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and as I discern Congress's intent in enacting the National Firearms Act, anyone found in possession of an unregistered sawed-off shotgun with a barrel under 18 inches can be convicted so long as he knows the gun in his possession is a sawed-off shotgun; although the jury must find that the barrel is shorter than 18 inches (to bring the weapon within the reach of the Act), the jury need not find that the *defendant* knew that the barrel was shorter than 18 inches. I believe the record shows that Dewalt knew he was carrying a sawed-off shotgun. And because he knew he had a sawed-off shotgun, any rule 11 error was harmless. Therefore I dissent.

### I. The Mens Rea Element After *Staples*

The Act requires the registration of a "firearm" and makes it illegal to receive or possess an unregistered firearm. 26 U.S.C. § 5861(d) ("It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."). On its face, section 5861(d) does not contain a mens rea requirement. The Supreme Court, however, has decided that Congress did not mean to dispense with a mens rea element—at least in part. On the one hand, the Court has held that the government need not prove that the defendant knew the firearm was unregistered. *United States v. Freed,* 401 U.S. 601, 607–10, 91 S.Ct. 1112, 1117–19, 28 L.Ed.2d 356 (1971). On the other hand, in *Staples* the Court held that the government must prove he knew the weapon had the characteristics of a regulated "firearm." 511 U.S. at ——, 114 S.Ct. at 1804; *cf. United States v. Harris,* 959 F.2d 246, 259–61 (D.C.Cir.) (per curiam) (same), *cert. denied,* 506 U.S. 932, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992).

*Staples* involved a semiautomatic sporting rifle that had been modified for fully automatic fire. Because it was fully automatic, the weapon was a "machinegun" and hence a "firearm" under the Act. 26 U.S.C. § 5845(a), (b). The defendant argued 'that the government had to prove he "knew that the weapon would fire fully automatically." *Staples*, 511 U.S. at ——, 114 S.Ct. at 1796. The government argued that all guns are potentially dangerous and therefore it need prove only that the defendant knew he possessed a firearm in the ordinary sense of the term. *Id.* at ——, 114 S.Ct. at 1798. The Supreme Court rejected the government's argument:

> [D]espite their potential for harm, guns generally can be owned in perfect innocence. Of course, we might surely classify certain categories of guns—no doubt including machineguns, *sawed-off shotguns*, and artillery pieces that Congress has subjected to regulation—as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in *Freed.* But precisely because guns falling outside those categories traditionally have been widely accepted as lawful possessions, their destructive potential, while perhaps even greater than that of some items we would classify along with narcotics and hand grenades, cannot be said to put gun owners sufficiently on notice of the likelihood of regulation to justify interpreting § 5861(d) as not requiring proof of knowledge of a weapon's characteristics.

*Id.* at ——, 114 S.Ct. at 1800 (emphasis added). The Court concluded:

> We emphasize that our holding is a narrow one. As in our prior cases, our reasoning depends upon a common-sense evaluation of the nature of the particular device or substance Congress has subject-

ed to regulation and the expectations that individuals may legitimately have in dealing with the regulated items.... We note only that our holding depends critically on our view that if Congress had intended to make outlaws of gun owners who were wholly ignorant of the offending characteristics of their weapons, ... it would have spoken more clearly to that effect.

*Id.* at ——, 114 S.Ct. at 1804 (citations omitted). At bottom, the Court worried that "virtually any semiautomatic weapon may be converted, either by internal modification or, in some cases, simply by wear and tear, into a machinegun within the meaning of the Act" but with "no externally visible indication that it is fully automatic." *Id.* at ——, 114 S.Ct. at 1802.

Since *Staples* the Eighth Circuit has held that, when an individual is charged with possession of an unregistered shotgun with a barrel under 18 inches, the government need prove only that he was aware that the shotgun was a sawed-off shotgun, not that he knew the barrel was under 18 inches. *United States v. Barr*, 32 F.3d 1320 (8th Cir. 1994). In *Barr* the court observed, "Unlike the modified semi-automatic rifle in *Staples*, a sawed-off shotgun is clearly not a traditionally lawful weapon and [the defendant] had no legitimate expectation that the weapon was not subject to regulation." *Id.* at 1324. The court emphasized that a sawed-off shotgun is "quasi-suspect" in character and "[a] defendant who observes such a weapon cannot possess it with innocence." *Id.* But see *Edwards v. U.S. Fidelity and Guaranty Co.*, 74 F.3d 1245 (7th Cir.1996) (*Staples* requires proof defendant knew barrel under 18 inches); *United States v. Mains*, 33 F.3d 1222 (10th Cir.1994) (same); *cf. United States v. Starkes*, 32 F.3d 100 (4th Cir.1994) (per curiam).[1]

---

1. The jury in *Starkes* was instructed that the government had to prove the defendant knew the item in his possession was a firearm within the general meaning of the term. *United States v. Starkes*, No. 92–5190, 1993 WL 212487, at *1 (4th Cir. June 16, 1993). On appeal he argued that the government must prove he knew he possessed a *sawed-off* shotgun. *Id.* The Fourth Circuit rejected his claim, *id.* at *1–2, but the Supreme Court vacated his conviction and "remanded for further consideration in light of [*Sta-*

ples]." *Starkes v. United States*, —— U.S. ——, 114 S.Ct. 2129, 128 L.Ed.2d 860 (1994). The Fourth Circuit in turn remanded for "a new trial in which the government must put on evidence of knowledge by the defendant of the *features* of the weapon that brought it within the scope of the statute." *Starkes*, 32 F.3d at 101 (emphasis added). It is therefore unclear whether the Fourth Circuit requires the government to prove the defendant knew the barrel was shorter than

The Eighth Circuit's rationale is sound. Just as the government must prove the defendant knew he had a *fully automatic* rifle rather than simply a rifle (*Staples*), the government must prove the defendant in possession of a shotgun with a barrel under 18 inches knew he had a *sawed-off* shotgun rather than simply a shotgun (*Barr*). The government need prove no more because the destructive potential of a sawed-off shotgun should alert anyone to the likelihood of regulation. *Cf. United States v. Mayo*, 498 F.2d 713, 718 (D.C.Cir.1974) ("As with the grenade in *Freed*, a sawed-off shotgun is a highly dangerous weapon, the possession of which would rarely be an innocent act."); *see Freed*, 401 U.S. at 616, 91 S.Ct. at 1121–22 (Brennan, J., concurring in the judgment) ("[T]he firearms covered by the Act are major weapons such as ... sawed-off shotguns.... Without exception, the likelihood of governmental regulation of the distribution of such weapons is so great that anyone must be presumed to be aware of it.").[2]

More to the point, the Eighth Circuit's reading of section 5861(d) is faithful to congressional intent. Congress enacted the National Firearms Act in 1934 to target sawed-off shotguns and machineguns because they were the preferred weapons of gangsters. H.R.Rep. No. 1780, 73rd Cong., 2d Sess. 1

(1934) ("[T]here is no reason why anyone except a law officer should have a machine gun, or sawed-off shotgun."); S.Rep. No. 1444, 73rd Cong., 2d Sess. 2 (1934) (same); *cf. Lane v. Washington Daily News*, 85 F.2d 822, 824 (D.C.Cir.1936) ("It is a matter of common knowledge that sawed-off shotguns are the implements of but two classes of persons, 'gangsters' and officers of the law."). United States Attorney General Homer Cummings, a sponsor of the bill, emphasized, "A sawed-off shotgun is one of the most dangerous and deadly weapons." *National Firearms Act: Hearings on H.R. 9066 Before the House Comm. on Ways and Means*, 73rd Cong., 2d Sess. 6 (1934) ("House Hearings"). As one congressman remarked during hearings on the proposed legislation, "If a man is carrying [a sawed-off shotgun], if he is not an officer, he ought to be taken into custody anyway, because we know that he is carrying it for an unlawful purpose." *Id.* at 111.

Congress's intent was to make the Act's application to shotguns as broad as possible without infringing on the legitimate use of shotguns by sportsmen and hunters. Congress, it appears, chose to regulate shotguns with barrels under 18 inches because they serve no legitimate hunting or sporting purpose.[3] " '[W]ith such a barrel length a shot-

---

18 inches or simply that he knew it was a sawed-off shotgun.

**2.** *See also United States v. Ranney*, 524 F.2d 830, 832 (7th Cir.1975) ("[O]ne would hardly be surprised to learn that possession of a sawed-off shotgun is not an innocent act."), *cert. denied*, 424 U.S. 922, 96 S.Ct. 1130, 47 L.Ed.2d 330 (1976); *United States v. Herbert*, 698 F.2d 981, 986 (9th Cir.) ("While a sawed-off shotgun ... may be a dangerous device of such type as would alert one to the likelihood of regulation, we do not find that an ordinary firearm that is internally and undetectably modified to be automatic yet legal in appearance and markings falls within this category."), *cert. denied*, 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983); *United States v. Ruggles*, 70 F.3d 262, 266 (2d Cir.1995) ("[C]ourts have described [sawed-off shotgun] as inherently dangerous and generally lacking usefulness, except for violent and criminal purposes.") (internal quotation marks omitted), *cert. denied*, —— U.S. ——, 116 S.Ct. 1284, 134 L.Ed.2d 229 (1996); *Page v. United States*, 282 F.2d 807, 811 (8th Cir.1960) (sawed-off shotgun "useless for any lawful purpose").

Dewalt suggests that there might be a situation where someone could innocently possess a sawed-off shotgun and thus not be alerted to the likelihood of regulation. It suffices to note that the same might be suggested of a hand grenade (also a "firearm" under the Act). Robert Batey, *Strict Construction of Firearms Offenses: The Supreme Court and the Gun Control Act of 1968*, Law & Contemp. Probs., Winter 1986, at 163, 177 n.122 ("There is a market for facsimile hand grenades, for use as paperweights and firecrackers. These uses clearly would not automatically alert one to the possibility of regulation."). Yet *Staples* makes clear that because a hand grenade is a highly dangerous weapon, one knowingly in possession of a grenade should be alerted to the likelihood of regulation. *Staples*, 511 U.S. at ——, 114 S.Ct. at 1799. Likewise as to the sawed-off shotgun which, like the hand grenade, is not included in "a long tradition of widespread lawful ... ownership by private individuals in this country." *Id.*

**3.** Today's typical sportsman or hunter uses a shotgun with a barrel length ranging from 26 to 32 inches. Tom Roster, Tom Roster's Shotgun Barrel Alteration Manual 55 (1995).

gun has a decreased range and therefore minimal utility as a hunting and sporting tool. Its chief value is as a weapon, regardless of its overall length and concealability.'" *State v. Ellenberger,* 543 N.W.2d 673, 677 (Minn.Ct.App.1996) (quoting *Brook v. State,* 448 N.E.2d 1249, 1251 (Ind.Ct.App.1983)). Congress's concern was not simply that a sawed-off shotgun may easily be concealed; the gun's size turns on its overall length, stock plus barrel, so barrel length alone may not determine that it is concealable. Rather, "because shortened barrels scatter shot indiscriminately they are especially dangerous, even if difficult to conceal" and therefore Congress "punish[ed] the use of any shotgun with a barrel of less than eighteen inches, regardless of the gun's overall length." *United States v. Hall,* 972 F.2d 67, 70 (4th Cir.1992).[4]

To sum up, Congress recognized that the sawed-off shotgun is an inherently dangerous weapon, both because it ordinarily can be concealed and because it shoots indiscriminately with scattered shot. It is consistent with congressional intent therefore (and not inconsistent with the reasoning of *Staples*) to conclude that a section 5861(d) charge arising from possession of a sawed-off shotgun requires the government to prove only: (1) the barrel is under 18 inches; (2) the shotgun is not registered to the defendant; and (3) the defendant knew he possessed a sawed-off shotgun. The government can prove the latter element with direct or circumstantial evidence. Cf. *Staples,* 511 U.S. at —— n. 11, 114 S.Ct. at 1802 n. 11 ("[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon.");

At argument and in supplemental briefs filed after argument, the government agreed with this approach: it took the position that it need prove only that Dewalt knew he possessed a sawed-off shotgun, not that he knew the barrel was under 18 inches. The government then filed a motion to withdraw its supplemental briefs. Apparently because of "a change from previous Department [of Justice] guidance," the motion recited, the government stipulated that, under *Staples,* section 5861(d) requires proof that Dewalt knew the barrel was under 18 inches. Unlike my colleagues, I do not consider myself bound by a party's stipulation in construing a statute or a Supreme Court holding and therefore have found it necessary to reach the *Staples* issue. *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.,* 508 U.S. 439, 448, 113 S.Ct. 2173, 2179, 124 L.Ed.2d 402 (1993)("[T]he Court of Appeals acted without any impropriety in refusing to accept what in effect was a stipulation on a question of law.").

Incidentally, before we hastily endorse a stipulation that frustrates congressional intent, the government should at least explain how it might prove a defendant knew the gun barrel is under 18 inches. The defendant (if he testified) could assert that he never stopped to consider the actual length of the barrel or that he did not *know* the barrel was under 18 inches. The government could counter with evidence that the defendant actually measured the barrel. But in the real world such evidence will rarely (if ever) exist and, critically, the statute would be rendered largely a nullity if such evidence were required. Perhaps the government could put on evidence that the defendant visually inspected the weapon and then argue for the inference that he *should have known* the barrel was under 18 inches and therefore should have known it was a dangerous item likely subject to regulation. But if *that* is sufficient to prove the mens rea element, there is no practical difference between requiring knowledge of the barrel length and requiring that he knew the weapon was a sawed-off shotgun. I analyze Dewalt's rule 11 claims on the assumption that the latter is all that is required.

---

4. The number "18" has no talismanic significance. Attorney General Cummings testified that experts believed that the minimum length could be set at 20 inches. House Hearings at 6. Indeed, shortly before enacting the National Firearms Act Congress passed a law regulating firearms in the District of Columbia. Pub.L. No. 72–275, 47 Stat. 650 (1932). The law, extant still, makes it illegal to possess a "sawed-off shotgun" defined as "any shotgun with a barrel less than twenty inches in length." *Id.* §§ 14, 1; *see* D.C.Code Ann. §§ 22–3214, 22–3201(b).

## II.  Rule 11(f)

The government's factual proffer at the plea hearing did not include the statement that Dewalt knew the weapon in his possession was a sawed-off shotgun (as opposed to a standard, unmodified shotgun).  Rule 11(f) requires that the court "satisfy itself that there is a factual basis for the plea."  "[T]he factual basis of which the rule speaks is merely sufficient evidence from which a reasonable jury could conclude that the defendant committed the crime."  *United States v. Abreu,* 964 F.2d 16, 19 (D.C.Cir.1992).  Arguably the government's proffer passed this test.  It established that drug interdiction officers saw Dewalt carrying a tote bag "that to them looked a little odd and it looked to them as if Mr. Dewalt was having difficulty carrying that bag."  Tr. at 12.  The officers "found the .16–gauge shotgun in the bag," *id.,* and as the indictment makes clear, the shotgun was a sawed-off shotgun with "a barrel length of 16½ inches."  A jury could reasonably conclude that Dewalt knew he had the weapon (29¼ inches in overall length) in the odd-looking bag he had difficulty carrying.  Further, a jury could reasonably conclude that he likely saw the item he knew he was carrying in his bag and that, consequently, he was aware it was a sawed-off shotgun.

In any event, if the court erred in failing to establish on the record that Dewalt knew he had a sawed-off shotgun, the issue is whether the error is harmless.  *See* Fed.R.Crim.P. 11(h).  In *United States v. Lyons,* 53 F.3d 1321, 1322–23 (D.C.Cir.1995), we made clear that we can look to the record as a whole— including the presentence investigation report (PSI) and the sentencing transcript—to determine whether error is harmless.  Here the record as a whole reveals the following.

Dewalt was stopped in an urban bus station carrying a gym bag containing a sawed-off shotgun and ammunition; the weapon was located beneath his clothes and other personal items.  PSI at 4.  When the officers approached Dewalt he was in line for a bus heading for New York City and he had a ticket showing he was traveling from Richmond, Virginia to New York City.  *Id.*  Defense counsel conceded at sentencing that Dewalt knew the gun was in his bag, Sentencing Tr. at 13, and Dewalt gave an alias to the officers, PSI at 5, manifesting subterfuge.  He later explained to the probation officer that he was traveling with his friend Gerald Neal (who was not apprehended) and they were "taking the weapon to New York City to sell it illegally."  *Id.*  And, significantly, the probation officer's notes from his presentence interview of Dewalt indicate that Dewalt knew he was transporting a *sawed-off* shotgun: *"Traveled to South Boston, Virginia with Gerald Neal.  Neal bought sawed-off shotgun, shotgun of defendant, and Neal traveled back to New York by bus."*  Sentencing Tr. at 12 (emphasis added); *see* PSI at 5 ("Mr. Dewalt asserted he was travelling ... with a friend, Gerald Neal, who had purchased a sawed-off shotgun.");  *cf.* Brief of Appellant at 24 ("[T]he defendant's other admissions concerning when and by whom the gun had been purchased, that he had been advised to give an alias if arrested, and that the gun would ultimately be sold in New York City, describe the type of detail that supports the conclusion that defendant had knowingly aided and abetted the possession and transportation of the shotgun.").  In short, Dewalt accompanied Neal to Virginia where Neal bought a sawed-off shotgun, Dewalt was aware Neal bought a sawed-off shotgun and he planned to help Neal sell the gun in New York City.[5]

In *Lyons* we relied on the fact that the defendant "acknowledged having reviewed the [PSI] and even registered specific objections" yet raised no objection to the paragraph describing the maximum penalty.  *Lyons,* 53 F.3d at 1323.  Here defense coun-

---

**5.**  Dewalt asserts that "there is no evidence that the defendant ... had any particularized knowledge of ... guns and their characteristics."  Brief of Appellant at 20.  But the record shows that Dewalt was no novice with guns.  Defense counsel represented at sentencing that Dewalt "has some knowledge of individuals that were selling guns, and he was going to make efforts to bring that to the government's attention."  Sentencing Tr. at 4.  Moreover, while released on bond for the instant offense, Dewalt and an accomplice committed an armed robbery.  While arresting Dewalt for that offense, the police recovered three guns from his apartment.  PSI at 6–7.

sel objected to the PSI's failure to acknowledge his acceptance of responsibility yet voiced no objection to the statement indicating that Dewalt knew he had a sawed-off shotgun.[6] And neither Dewalt nor defense counsel took issue with the substance of the presentence investigation interview notes which were read at sentencing. *Cf. id.* (relying on failure of defendant or defense counsel to express surprise or raise objection to statements made at sentencing to indicate defendant knew maximum penalty). It thus appears that Dewalt does not claim he did not know he was carrying a sawed-off shotgun (he claims only that he did not know the barrel was under 18 inches). Because the record as a whole establishes that Dewalt knew the gun in his possession was a sawed-off shotgun, the factual basis for the mens rea element was laid and any error is harmless.

### III. Rule 11(c)(1)

Dewalt, citing rule 11(c)(1), next complains that the court did not explain to him that the government had to prove he *knew* he was carrying a sawed-off shotgun. Rule 11(c)(1) requires the court to "inform the defendant of, and determine that the defendant understands, ... the nature of the charge to which the plea is offered." The rule does not require the court to explain each element of the charge: where the charge is straightforward and the defendant is represented by counsel, the court need only ensure the defendant understands the "substance" of the charge. *See United States v. Liboro,* 10 F.3d 861, 864 (D.C.Cir.1993). In many if not most cases the court conveys the nature of the charge by publishing the indictment at the plea hearing; the court should ordinarily publish the indictment.

The indictment here charges that Dewalt "knowingly received and possessed a firearm, that is, J.C. Higgins [sic] sawed-off shotgun" and states that the gun had "a barrel length of 16½ inches" and "had not been registered to him." App. at 7. The indictment conveys the "substance" of the charge: it reflects that he was charged with having knowingly possessed an unregistered firearm, specifically a sawed-off shotgun. Had the district court published the indictment at the plea hearing, there would have been no rule 11 error. But the court did not, and I agree there was error. In my view, however, the error was harmless.

The record manifests that Dewalt knew he was carrying a sawed-off shotgun so his complaint is that the court failed to explain that the government had to *prove* he knew what he knew. Would that "information"—that the government had to prove he knew what he knew—have been "important" to Dewalt in his "decision to plead guilty" (*see* Majority Opinion at 1213–14)? Dewalt, represented by an assistant public defender, presumably was aware that, even without his admissions, the government could make the following case. First, far from being an innocent sportsman or hunter, Dewalt was caught toting a sawed-off shotgun in a D.C. bus station en route to New York City. Second, Dewalt knew he had the shotgun in his bag: officers could testify that they were alerted because Dewalt's bag appeared to contain a relatively lengthy object, Dewalt appeared to be exerting unusual effort in carrying the bag and he periodically glanced at the officers. *See* PSI at 3. And they could testify that he gave them a bogus name. Third, the inference could be drawn that at some point before his arrest Dewalt saw the weapon (and therefore knew he had a sawed-off shotgun)—a rational defendant in Dewalt's shoes, assisted by counsel, likely would not have rolled the dice and gone to trial hoping the jury would decline to draw that inference. Finally, in analyzing Dewalt's decision making process, we cannot ignore what the district court observed at the plea hearing: "The whole tenor of the [plea] agreement ... is that [Dewalt] would be attempting to assist the government with the hope that the government would file ... a [United States Sentencing Guidelines section] 5K1.1 motion to permit

---

6. Dewalt and defense counsel both signed a "Receipt and Acknowledgment of Presentencing Investigation Report" form attesting that they "received and reviewed" the PSI. They checked a box labeled "There are material/factual inaccu-

racies in the PSI report as set forth in the attachment." The attachment stated simply that "Mr. Dewalt is entitled to acceptance of responsibility." We must assume, therefore, that there are no *factual* inaccuracies in the PSI.

sentencing below the guidelines." Tr. at 8; *id.* at 9 ("expectation of cooperation" was "really the purpose of the plea agreement"). In this connection Dewalt told the probation officer that he pleaded guilty "believing he would receive a 'slap on the wrist.'" PSI at 5. His expectation of a "slap on the wrist" based on his hope of a substantial assistance motion by the government would not have evaporated had the court explained that the government had to prove he knew what he knew. I am completely "confident" that the court's failure to explain that "played no role in inducing [his] decision to plead guilty." *Lyons,* 53 F.3d at 1323. I therefore respectfully dissent.[7]

---

7. The majority (but not Dewalt) cites *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), where the Court held that the defendant's ignorance of the mens rea element of second degree murder rendered his guilty plea unconstitutional as a matter of law. Dewalt does not attack the constitutionality of his plea; he challenges only the district court's compliance with rule 11. Dewalt could challenge the constitutional validity of his plea in a 28 U.S.C. § 2255 proceeding and request an evidentiary hearing on whether his counsel in fact gave him adequate notice of the mens rea element. *Cf. Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258–59; *United States v. Frye,* 738 F.2d 196 (7th Cir.1984). Regarding the constitutionality of his plea, presumably defense counsel, an assistant public defender, was aware that both the Supreme Court (*Staples*) and this court (two years earlier in *Harris, supra*) had held that section 5861(d) had a mens rea element. And presumably she explained the substance of the charge to Dewalt. *Cf. Henderson,* 426 U.S. at 647, 96 S.Ct. at 2258–59.