# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 7, 2011        Decided December 9, 2011

No. 09-3116

IN RE: SEALED CASE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00233-1)

Before: ROGERS, *Circuit Judge*, and WILLIAMS and
RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Appellant and a co-defendant were
extradited from Panama following their indictment on one count
of conspiracy to distribute five kilograms or more of cocaine,
intending or knowing that it would be imported into the United
States from Columbia, Panama, Nicaragua, and elsewhere
outside of the United States. Appellant pleaded guilty and
received a below-Guidelines sentence of 84 months'
imprisonment (and 36 months' supervised released). On appeal,
he contends that the district court lacked jurisdiction; venue was
improper; his guilty plea was not knowing, intelligent, and
voluntary; and he was denied the effective assistance of counsel.

He also contends that his sentence was unreasonable. None of appellant's challenges to his conviction succeed.

The district court had jurisdiction over the charged conspiracy because appellant's extradition conformed with the governing treaty between the United States and Panama, and appellant waived his venue challenge by not raising it in the district court. Appellant identifies no plain error affecting his substantial rights in the district court's acceptance of his guilty plea. Further, appellant fails to show he was denied effective assistance of counsel as would entitle him to reversal of his conviction. Because appellant presents no grounds for setting aside the judgment based on his guilty plea, the waiver of his right to appeal a below-Guidelines sentence set forth in the plea agreement is valid. Accordingly, we dismiss the appeal of his sentence and affirm the judgment of conviction.

## I.

In November 2004, appellant was negotiating with a confidential source ("CS") to arrange for the importation of heroin and cocaine into the United States. From then until April 2006, appellant regularly communicated with the CS by telephone and e-mail. Appellant advised the CS of his contacts with Colombian paramilitaries and their interest in exchanging cocaine for weapons. In June 2005, appellant introduced the CS to a heroin supplier at a videotaped meeting in Honduras; the three men agreed to conduct a drugs-for-weapons exchange in the near future. Appellant met the CS again in November 2005, in Nicaragua, where the CS conducted a "weapons flash" and appellant took digital pictures to show his paramilitary contacts.

At a meeting in Colombia in February 2006, appellant introduced the CS to some of his paramilitary contacts, including his co-defendant (hereinafter "Doe"), who represented

a cocaine supplier associated with the paramilitaries. Appellant told Doe that he had seen the weapons in November, and Doe reached an agreement with the CS to deliver several hundred kilograms of cocaine in exchange for the weapons. Doe and the CS thereafter confirmed the details of the exchange by telephone and discussed transporting the cocaine from Columbia to Las Vegas and Chicago, among other locations in the United States. Doe told appellant he was planning to sell 500 kilograms to the CS outright, on which he would pay appellant a commission of $100 per kilogram, and to provide the CS an additional 200 kilograms on credit, on which he would pay appellant a commission of $200 per kilogram. Appellant later discovered Doe planned to sell the CS 700 kilograms outright, for a total of 900 kilograms of cocaine.

Pursuant to their agreement, Doe sent an associate (hereinafter "Moe") to meet with the CS in Nicaragua on March 29, 2006, and view the weapons. Moe called the CS to inform him of his arrival in Nicaragua, saying he was calling on appellant's behalf. Following an inspection of the weapons, Moe informed Doe that they were acceptable. On March 31, 2006, and April 1, 2006, the CS and an undercover Panamanian law enforcement officer met with appellant, Doe, and Moe in Panama, where the cocaine was available for delivery, to discuss the weapons-for-drugs exchange. On April 5, 2006, Panamanian officials took appellant, Doe, and Moe into custody pursuant to a provisional arrest warrant submitted by the U.S. Department of State to the Republic of Panama.

A federal grand jury in the District of Columbia indicted appellant, Doe, Moe and two other individuals on April 25, 2006, on one count of conspiracy to distribute five kilograms or more of cocaine, intending or knowing that it would be unlawfully imported into the United States from the Republics of Colombia, Panama, Nicaragua, and elsewhere outside of the

United States, in violation of 21 U.S.C. § 963, in conjunction with 21 U.S.C. §§ 959(a)(1), 960, and 18 U.S.C. § 2. On June 1, 2006, the U.S. Department of Justice sent documents formalizing the requests for extradition of appellant, Doe, and Moe to the State Department for immediate submission to the appropriate Panamanian authorities. Appellant and Doe were brought to the United States and arraigned in the district court on October 9, 2007, and January 15, 2008, respectively. Two weeks before his scheduled trial date, appellant entered into a plea agreement with the government.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the district court held a hearing in which appellant participated with the assistance of court-appointed counsel and a court-certified interpreter. When the district court inquired if appellant had been given a written Spanish translation of the plea agreement, defense counsel advised that appellant had not but explained that he and appellant "went through the factual proffer fairly in detail," Plea Hr'g Tr. 5, July 30, 2008, with the assistance of a court-certified interpreter, the day before the Rule 11 hearing. They met again with the interpreter in the cell block the morning of the hearing to review amendments to the plea agreement. Defense counsel further advised the district court that he and appellant "went over the plea agreement in terms of the meanings of the particular paragraphs and sometimes verbatim translations of the particular paragraphs, as well as a review of the facts," and that he believed appellant was "comfortable with both" the plea agreement and the statement of facts "and signed them." *Id.* at 5. The district court then emphasized to appellant that it would be willing to answer his questions at any time. Speaking through an interpreter, appellant told the district court that he was satisfied with defense counsel's services and that his counsel had "explained things to [him]," "kn[ew] all about [his] part in all this," and had "helped [him] with the translations and in making [him] understand the

process." *Id.* at 9. The district court inquired about any medications appellant might have taken that day; appellant stated that he had taken one pill to help him sleep, another for sleep-related anxiety, and another for his blood pressure, and when the district court inquired, he affirmed that he felt alert and could pay attention during the hearing, *id.* at 8.

After reviewing the government's factual proffer with appellant, the district court explained the terms of the plea agreement. The district court advised appellant that he would be sentenced to a minimum of ten years' imprisonment and a maximum of life imprisonment, and that he also could be fined. The district court, appellant, and his counsel also discussed the likelihood that appellant would be deported upon release from prison and the relationship between his deportation and any period of supervised release the district court might order. The district court summarized the factors it would consider in determining his sentence and noted the possibility that his Guidelines sentencing range could change prior to sentencing. It then explained to appellant the significance of the waiver of his right to appeal a sentence below the statutory maximum; when asked if this explanation of the waiver was clear, appellant indicated it was.

As part of the Rule 11 colloquy, the district court inquired whether appellant was entering the plea agreement of his own free will, and appellant explained that his decision to do so related to his co-defendant Doe's decision to plead guilty, but that he also "want[ed] to cooperate in everything [he] [could]." *Id.* at 28. Then, after appellant assured the district court that no one had tried to threaten or force him into entering the plea agreement, the district court accepted his guilty plea as intelligent and voluntary.

Before the hearing concluded, appellant renewed his request to be moved to another facility, reminding the district court that he had been attacked at the D.C. Jail and that he feared for his safety. The government, which for security reasons had opposed a transfer to the Corrections Treatment Facility ("CTF") where his co-defendant Doe was being housed, withdrew its opposition because "both [appellant] and [Doe] [were] cooperating." *Id.* at 30–31.

Over five months later, on January 8, 2009, appellant filed two *pro se* motions requesting the appointment of new counsel. In his first motion, appellant claimed that he had received ineffective assistance of counsel because counsel had been too busy to attend to his case, and that he "was forced to sign a plea agreement without knowing fully what it meant" because defense counsel had not provided him with a copy of the plea agreement in Spanish. Mot. for Sixth Am. Violation Ineffective Assist. Counsel 1. He also suggested that in return for his plea he had been "offered to be taken out of solitary confinement at D.C. Jail and transferred to CTF" after having been "put in protective custody after an assassination attempt." *Id.* In his second motion, appellant claimed that defense counsel, in a possible conflict of interest, had allowed co-defendant Doe's counsel to question him about a 1998 incident, after which Doe decided to plead guilty and testify against him. Mot. for Sixth Am. Violation Conflict Interest 1. The district court appointed new counsel while "making no decision at [that] point about [his] plea" and emphasizing that the appointment of new counsel did not "mean[] that there [would] be any kind of automatic granting of a request . . . to withdraw [his] plea." Status Conf. Tr. 12–13, Jan. 15, 2010.

On October 21, 2009, the district court sentenced appellant to 84 months' imprisonment, followed by 36 months' supervised release.[1]

## II.

As a threshold matter, appellant contends that the district court lacked jurisdiction over his case because his arrest and extradition to the United States violated the governing extradition treaty. Specifically, he contends that his extradition did not conform to the method of delivering a prisoner to the United States prescribed in Article IV, as required by Article I, of the Treaty Between the United States and Panama for the Mutual Extradition of Criminals, U.S.-Pan., May 25, 1905, 34 Stat. 2851 ("Extradition Treaty"). He also contends that his extradition violated the doctrine of "dual criminality," which allows extradition only if the charged conduct is considered criminal in both jurisdictions. *See United States v. Sensi*, 879 F.2d 888, 893 (D.C. Cir. 1989).

---

[1] From a base offense level of 38, appellant received a two-level reduction for acceptance of responsibility, and an additional two-level reduction under the "safety valve provision," U.S.S.G. § 5C1.2(a). The district court denied appellant a two-level reduction for being only a "minor participant" in the conspiracy, reasoning that he had been involved in the conspiracy for a longer period of time than his co-defendant Doe and had served as the "bridge" connecting the CS to Doe and other participants. Appellant's Guidelines range was thus 151–188 months. The government moved for an additional three-level departure for substantial assistance, reducing the Guidelines range to 108–135 months. Upon considering the factors in 18 U.S.C. § 3553(a), the district court sentenced appellant to 90 months' imprisonment, with credit for time served here and in Panama, thus arriving at a sentence of 84 months' imprisonment, with 36 months' supervised release.

The Extradition Treaty provides that the United States and Panama "mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified . . . , committed within the jurisdiction of one of the contracting parties, shall . . . be found within the territories of the other." Extradition Treaty art. I. Where the United States seeks the "arrest and detention of a fugitive" in Panama before "the presentation of formal proofs," "the proper course shall be to apply to the Foreign Office, which will immediately cause the necessary steps to be taken in order to secure the provisional arrest or detention of the fugitive." *Id.* art IV. The United States must then submit a formal requisition for the surrender of the prisoner, supported by evidence, within two months of the prisoner's arrest; otherwise, the prisoner must be released. *See id.* Both the Republic of Panama and the United States are also parties to the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, *opened for signature* Dec. 20, 1988, 1582 U.N.T.S. 95 ("U.N. Drug Convention"), under which signatories agreed to establish as a criminal and extraditable offense the conspiracy to distribute narcotic drugs such as cocaine, *see id.* art. 3, ¶ 1, art. 6, ¶ 2.

The record, as supplemented, indicates by all appearances that appellant was taken into custody pursuant to a provisional arrest warrant submitted to Panamanian government officials, and that the U.S. government submitted formal documentation in support of his extradition from Panama within two months of the arrest. Appellant identifies no irregularities in his arrest or extradition that would suggest nonconformity with the method prescribed in the Extradition Treaty. Further, appellant's extradition did not violate the doctrine of "dual criminality" because the charged conduct — conspiracy to distribute cocaine — was a criminal and extraditable offense in Panama, a signatory to the U.N. Drug Convention. *See* U.N. Drug Convention art. 3, ¶ 1, art. 6, ¶ 2. Therefore, appellant's

jurisdictional challenges are without merit. Appellant has waived his challenge to venue in the District of Columbia by failing to raise it in the district court, *see United States v. Gartmon*, 146 F.3d 1015, 1029 (D.C. Cir. 1998); *United States v. Gaviria*, 116 F.3d 1498, 1517 & n.22 (D.C. Cir. 1997); *United States v. Wilson*, 26 F.3d 142, 151 (D.C. Cir. 1994).

## III.

Rule 11 of the Federal Rules of Criminal Procedure "prescribes a procedure 'designed to assist the district court judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary . . . [and] to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination,'" *United States v. Dewalt*, 92 F.3d 1209, 1211–12 (D.C. Cir. 1996) (quoting *McCarthy v. United States*, 394 U.S. 459, 465 (1969)), thereby "'eliminat[ing] any need to resort to a later [*i.e.*, post-conviction] factfinding proceeding in [the] highly subjective area of voluntariness,'" *id.* at 1212 (second and third alterations in original) (quoting *McCarthy*, 394 U.S. at 469). After a sentence is imposed, the defendant may not withdraw his plea; rather, "the plea may be set aside only on direct appeal or collateral attack." FED. R. CRIM. P. 11(e). Any variance from the requirements of Rule 11 is harmless error unless it "affects substantial rights." *Id.* 11(h). Where a defendant raises Rule 11 error for the first time on appeal, review is for plain error. *United States v. Dominguez Benitez*, 542 U.S. 74, 80 (2004) (citing *United States v. Vonn*, 535 U.S. 55, 63 (2002)); *see also United States v. Olano*, 507 U.S. 725, 731–37 (1993). Unless the error — even one "preserved" by objection in the district court — is "structural," it can result in reversal of a conviction only if it affected the outcome of the proceeding. *Dominguez Benitez*, 542 U.S. at 81. The defendant must demonstrate a

"reasonable probability that, but for the error, he would not have entered" a guilty plea. *Dominguez Benitez*, 542 U.S. at 83.

On appeal, appellant contends that his guilty plea was not knowing, intelligent, or voluntary because he was never provided a written translation of the plea agreement in Spanish, his native tongue; "he was under the duress and coercive effect of being housed in a detention facility where" he had suffered a knife attack, "knowing that as soon as he pleaded guilty he would be moved out of that facility," Appellant's Br. 21; and the district court was required to conduct a more searching inquiry into the nature and effects of the medications he had taken on the day he entered his plea. He also identifies two points during the plea colloquy that he contends reveal his general lack of understanding: his question regarding the relationship between his likely deportation and any period of supervised release the district court might order, and his apparent confusion over the difference between a reduction below the statutory minimum sentence and a departure from the Guidelines sentencing range.

At no point has appellant contended that, but for the Rule 11 errors he asserts the district court committed, he would not have pleaded guilty. Nor does appellant identify any provision of the plea agreement he would not have accepted. The alleged errors thus "did not affect the outcome of the district court proceeding," *Dewalt*, 92 F.3d at 1213, and are harmless, *see* FED. R. CRIM. P. 11(h). Appellant therefore fails to demonstrate that he is entitled to reversal of his plea-based conviction on the ground that the district court plainly erred under Rule 11. This is so even treating appellant's claims as constitutional in nature — going to the knowing and voluntary element of his guilty plea — because he does not argue his claims are of "structural" error. *See Dominguez Benitez*, 542 U.S. at 81; *cf. United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006).

**IV.**

"'A plea is not voluntary or intelligent,' and therefore unconstitutional, 'if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence.'" *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998) (quoting *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990)). Appellant's contention that his plea was not voluntary and intelligent because he was denied his Sixth Amendment right to the effective assistance of counsel is evaluated under the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984). *See United States v. Hanson*, 339 F.3d 983, 990 (D.C. Cir. 2003). Appellant must show both "that his counsel's performance 'fell below an objective standard of reasonableness,'" *Taylor*, 139 F.3d at 929 (quoting *Strickland*, 466 U.S. at 687–88), and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *id.* at 929–30 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). *See also United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000).

As with his Rule 11 contentions, appellant fails to assert — let alone demonstrate — a reasonable probability that, but for initially appointed defense counsel's purported errors, he would not have pleaded guilty. Rather, appellant appears to suggest he would have pleaded sooner than his co-defendant Doe had defense counsel provided him with a written Spanish translation of the plea agreement, consulted with him more frequently, and protected him from questioning by his co-defendant Doe's counsel. "At a minimum," appellant contends, defense counsel "should have negotiated a joint plea," Appellant's Br. 26–27, thereby denying the co-defendant the "tactical advantage" he enjoyed at sentencing as a result of his earlier plea, *id.* at 25. Yet in articulating his request for new appointed counsel,

appellant told the district court that although "there were certain matters that [he] want[ed] to clear up in terms of the procedure," he "always wanted to cooperate with the prosecution" and with "the government of the United States." Status Conf. Tr. 14, Jan. 15, 2010. From the time of his initial request for new counsel through this appeal, appellant has never suggested that he would not have pleaded guilty had initially appointed defense counsel provided more satisfactory assistance. Therefore, his ineffective assistance claim necessarily fails the second prong of the *Strickland* test.

## V.

"A defendant may waive his right to appeal his sentence as long as his decision is knowing, intelligent, and voluntary." *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). During the Rule 11 hearing, appellant confirmed his understanding that in pleading guilty he would waive his right to challenge the reasonableness of his sentence on appeal unless it exceeded the Guidelines range. Because appellant has shown no procedural or constitutional defect in the district court's acceptance of his guilty plea, appellant's waiver is valid and the appeal of his below-Guidelines sentence is foreclosed.

Accordingly, we dismiss the appeal of appellant's sentence and affirm the judgment of conviction.